IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:22-CR-57-TAV-DCP |
| | ) | |
| LARICO LAMAR SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Larico Smith's Motion to Suppress Statements [Doc. 24] and Motion to Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25]. *See* 28 U.S.C. § 636(b). Defendant, who is charged with being a felon in possession of a firearm on October 24, 2021 [Doc. 39], contends his Fourth Amendment rights were violated because law enforcement lacked both a reasonable basis for the warrantless seizure of his cellular telephone and probable cause for a search warrant to search its contents [Doc. 25 pp. 1, 4–5].[1]

On October 24, 2021, officers arrested Defendant for domestic assault and found a firearm on the ground near or under Defendant's car. Defendant was subsequently released on conditions, including that he not contact the alleged victim Leu Hunter. The releasing court issued a conditional release order setting out the "no contact" provisions of Defendant's bond.

On December 16, 2021, Knoxville Police Department ("KPD") Officer Jonathan Gomez conducted a traffic stop on a vehicle driven by Defendant and in which Ms. Hunter was a

---

[1] Defendant also moves the Court to suppress his unwarned statements made at the time of his October 24, 2021 arrest [Doc. 24 p. 2]. Defendant now agrees that his Motion to Suppress Statements is moot.

passenger. After learning that Defendant was on conditional release with an order prohibiting contact with Ms. Hunter, Officer Gomez arrested Defendant. Officer Gomez removed Defendant's black Apple iPhone from his person and placed it in property storage at the Knox County Sheriff's Office ("KCSO") detention facility, where Defendant was detained. On December 21, 2021, Officer Gomez retrieved Defendant's iPhone from KCSO's property storage and prepared an affidavit in support of a search warrant for the phone's contents. On December 23, 2021, Officer Gomez obtained a search warrant authorizing the search of the iPhone for evidence of Defendant's violation of the conditional release order.

Defendant asks the Court to suppress all evidence seized from his cellular telephone, arguing that Officer Gomez's warrantless seizure of his cell phone both at the time of his arrest and later from the property storage of another law enforcement agency violated the Fourth Amendment. He also contends the affidavit in support of the state search warrant lacks probable cause because it fails to demonstrate a nexus between his cellular telephone and evidence of violations of his conditional release. Finally, Defendant requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing the affidavit contains deliberately or recklessly false statements or material omissions that are necessary to probable cause.

For the reasons discussed below, the Court finds the officer's warrantless seizure of Defendant's cellular telephone comported with the Fourth Amendment. The Court also finds Defendant has not met the threshold for a *Franks* hearing, having failed to show that the officer deliberately or recklessly withheld or falsely stated material information from the affidavit. The Court finds, however, that the search warrant affidavit does not provide probable cause to search Defendant's cell phone because it lacks a nexus between the alleged criminal activity and Defendant's phone. Despite this deficiency in nexus, the Court recommends against suppression

2

of the evidence because law enforcement executed the search warrant in good faith. Accordingly, the Court respectfully recommends that Defendant's Motion to Suppress [Doc. 25] be denied.

## I.      BACKGROUND AND SUMMARY OF THE EVIDENCE

On October 24, 2021, officers responded to a residence after receiving a 9-1-1 call from Leu Hunter, who reported a domestic dispute and that Defendant left the residence on foot with a gun [Doc. 29 p. 2].[2] Upon arrival, officers saw Defendant standing by his car, which was parked on the street in front of the residence [*Id.*]. Defendant went to the front porch, where the officers arrested him [*Id.*; *see also* Doc. 24 p. 1]. After Defendant's arrest, officers found a firearm on the ground under or beside Defendant's car [Doc. 29 p. 2 ("near"); *see* Doc. 24 p. 2 ("under")]. Defendant was charged with domestic assault and unlawful possession of a firearm and was released on conditions, including that he have no contact with the alleged victim Ms. Hunter [Doc. 29 p. 3; Doc. 26 p. 6]. The Knox County General Sessions Court issued a Domestic Violence/Child Abuse Conditional Release Order ("CRO"), which was signed by Defendant, memorialized the no-contact condition, and advised Defendant that he was subject to "immediate arrest" for violations of the CRO [Doc. 29 p. 3; Doc. 26 p. 6].

On December 23, 2021, KPD Officer Jonathan Gomez presented a two and one-half page affidavit in support of an application to search a cell phone obtained during Defendant's December 16, 2021 arrest [*Id.* at 2–4].[3] The affidavit states that on December 16, 2021, at 4:48 p.m., Officer

---

[2]      The circumstances of Defendant's October 24, 2021 arrest are taken primarily from the Government's response [Doc. 29] as corroborated by Defendant's Motion to Suppress Statements [Doc. 24] and the Conditional Release Order [Doc. 26 p. 6].

[3]      Defendant filed a supplement to his suppression motion, attaching as exhibits the affidavit and search warrant from December 23, 2021; a return from December 29, 2021; and an affidavit and search warrant from June 21, 2021 [Doc. 26]. Detective Gomez's affidavit for the first search warrant with attachments is also an exhibit to the Government's response [Doc. 29-1 pp. 1–7]. The entire affidavit from December 23, 2021, is written in capital letters, but the undersigned will

Gomez stopped a silver Chevrolet Impala with dark tinted windows and a clear license plate cover in violation of a city ordinance [*Id*. at ¶2]. Officer Gomez identified the driver as Defendant Smith and the front passenger as Leu Hunter [*Id*. at ¶¶3–4].[4] Officer Gomez performed an NCIC records check, which revealed that Defendant 'was the respondent to an active temporary order of protection that was set as a conditional bond release signed by both" a magistrate judge and Defendant [*Id*. at ¶4]. The records check revealed that "[t]he protected party to this temporary order of protection was Leu Hunter who was seated in the passenger seat" [*Id*.]. The affidavit provides that the CRO, which remains in effect until October 26, 2022, prohibits Defendant from contacting or communicating with Ms. Hunter in person or by electronic means and directs him to avoid any place where she is likely to be [*Id*. at ¶5]. The affiant attached a copy of the CRO as an exhibit to the affidavit [*Id*.].[5]

Officer Gomez's affidavit states that Defendant was arrested without incident and that officers removed a black Apple iPhone from his hands [*Id*. at ¶6]. The affidavit relates that officers spoke with Ms. Hunter, who professed not to know that Defendant was prohibited from contacting her [*Id*. at ¶7]. Ms. Hunter told the officers that she and Defendant had separate residences [*Id*.].

---

provide any quotations from the affidavit in upper- and lower-case letters for ease of reading. Additionally, some paragraphs of the affidavit are numbered, while others are not. The Court will cite to the paragraph number when possible and otherwise to the page number.

[4] Defendant identified himself as "Larico Washington," but Officer Gomez identified him as Larico Smith after conducting an NCIC records check [Doc. 26 ¶¶3–4 & pp. 7–8].

[5] The parties both include a copy of the NCIC records report regarding the "temporary protection order" as an attachment to the affidavit along with the CRO [Doc. 26 pp. 7–8; Doc. 29-1 pp. 6–7]. It appears that the NCIC records were also attached to Officer Gomez's affidavit submitted in support of the search warrant because the records have the same "EXHIBIT A" heading as the CRO.

According to the affidavit, Officer Gomez has participated in numerous investigations of domestic violence, domestic assault, and of violations of orders of protection [*Id.* at ¶1]. The affidavit states that based upon Officer Gomez's training and experience, he knows that most people use cell phones as their primary means of communication, and he believed that Defendant used his cell phone to arrange to meet Ms. Hunter to pick her up in his vehicle [*Id.* at ¶¶7, 9]. Also, based on his training and experience, Officer Gomez knows that persons violating conditional release orders will use their cell phones to communicate with the protected party "through third-party applications, text messages, phone calls, emails, and other electronic means that may be stored on the" cell phone [*Id.* at ¶9].

The affidavit states that at the conclusion of the stop, law enforcement released the vehicle to Ms. Hunter at Defendant's request [*Id.* at ¶7]. According to the affidavit, Defendant's "Apple iPhone was placed into [his] property and processed by Knox County Detention Facility" [*Id.* at ¶8]. Officer Gomez "retrieved the Apple iPhone from the Knox County [Sheriff's] Detention Facility and confiscated [it]" and secured it at the KPD Property Unit [*Id.*]. The affidavit asks to search Defendant's cell phone for evidence of violations of his CRO as prohibited by Tennessee Code Annotated § 40-11-150 [*Id.* at p. 4].

Based upon Officer Gomez's affidavit, Knox County Criminal Court Judge Scott Green issued a search warrant for Defendant's cell phone on December 23, 2021 [*Id.* at 9]. The search warrant permits the search of Defendant's cell phone, located at the KPD, for evidence of violations of a conditional release order, including calls and electronic communications from Defendant to the victim Leu Hunter [*Id.*].

5

Defendant Smith subsequently moved to suppress the evidence seized from the search of his cellular telephone[6] [Doc. 25].[7] The parties appeared before the undersigned for a motion hearing on March 27, 2024. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Randall E. Reagan represented Defendant Smith, who was also present. The Government presented the testimony of KPD Detective Jonathan Gomez.

Detective Gomez testified that he is currently a KPD detective and has worked as a KPD officer since 2017 [Doc. 58 p. 10]. Before he was hired by the KPD, he worked as a military policeman and a counterintelligence special agent [*Id.*]. On December 16, 2021, Detective Gomez was a field training officer on the KPD Community Engagement Response Team [*Id.*]. While on patrol that day, he noted the darkly tinted windows of a vehicle traveling in the opposite direction [*Id.* at 10–11]. Detective Gomez turned his patrol car around, caught up to the vehicle, and noticed the vehicle had a clear plate cover, which is a traffic infraction [*Id.* at 11]. Detective Gomez stopped the vehicle for having darkly tinted windows and a clear plate cover [*Id.*].

---

[6]    Defendant also moved to suppress evidence seized from the execution of a state search warrant ("the second search warrant") for two cellular telephones seized at Defendant's June 16, 2021 arrest on the instant federal charge [Doc. 25 pp. 3–5]. At the March 27, 2024 motion hearing, Government's counsel asserted that the motion is moot as to the second search warrant because law enforcement could not unlock one cell phone to search it and the search of the second cell phone yielded nothing of evidentiary value. Defense counsel agreed that because the Government will not use any evidence seized pursuant to the second search warrant, his suppression motion is moot as to the second search warrant. Accordingly, the Court does not address any arguments relating to the second state search warrant.

[7]    Defendant also moved to suppress his oral and written statements to law enforcement following his arrest on October 24, 2021 [Doc. 24 pp. 1–2]. The Government responded that this motion is moot because it does not intend to use Defendant's October 24, 2021 statement at trial [Doc. 29 p. 1]. At the March 27, 2024 evidentiary hearing, Government's counsel confirmed that the Government would not use any statements by Defendant from his arrest and that if it sought to introduce the video recording of the arrest, it would not play the audio. Following that clarification, defense counsel agreed that Defendant's motion to suppress statements is moot. The undersigned **RECOMMENDS** that Defendant's Motion to Suppress Statements [**Doc. 24**] be **denied as moot**.

Detective Gomez stated that he approached the driver, whom he identified as Defendant Smith, and asked for his identification [*Id*.]. When he checked Defendant's name in NCIC, he saw that Defendant had a temporary protective order as a bond condition and that the protected party was Defendant's female passenger [*Id*.]. Detective Gomez said he arrested Defendant for violating the conditions of his bond and took Defendant's cell phone [*Id*. at 11–12]. He related that Defendant's cell phone "went with him to the jail" where it was placed in Defendant's personal property [*Id*. at 12].

Detective Gomez said he prepared an affidavit for a state search warrant for Defendant's cell phone [*Id*.]. He agreed that he consulted with the assistant district attorney ("ADA") when preparing the application for the search warrant and the ADA reviewed the application [*Id*.]. Detective Gomez stated that he frequently asks the ADA to review his search warrant applications to make sure that he includes all elements of the crime and that the probable cause and alleged charges are correct [*Id*.]. He said in this case, the ADA approved his search warrant application for the contents of Defendant's cell phone and that a state court judge issued the search warrant [*Id*.]. Detective Gomez said, at the time he sought the search warrant, Defendant had state charges for violating the protective order and additional charges relating to his female passenger [*Id*. at 13]. He agreed that he was investigating those crimes [*Id*.].

Detective Gomez stated that he later sought a second search warrant for two cellular telephones belonging to Defendant [*Id*.]. He drafted the affidavit in support of the second search warrant, an ADA reviewed it, and a judge issued the second search warrant [*Id*.]. Regarding the execution of the second search warrant, he agreed that law enforcement was not able to unlock one of the cell phones, which was an iPhone, and did not seize anything of evidentiary value from the other cell phone [*Id*.].

On cross-examination, Detective Gomez testified that on December 16, 2021, he was not yet a detective but was a uniformed officer [*Id*. at 14]. He stated that he had no information about Defendant or his passenger before stopping Defendant's vehicle, nor did he know who was in the car [*Id*.]. He said once he stopped Defendant's vehicle, the passenger identified herself as Leu Ellen Hunter [*Id*.]. He agreed Defendant cooperated with him and provided his identification [*Id*. at 15]. Detective Gomez said he did not cite Defendant for his window tint being too dark or for having a clear plate cover [*Id*.]. Instead, he arrested Defendant for violating his bond condition [*Id*.].

Detective Gomez agreed that orders of protection are a "separate legal proceeding" from bond conditions but said here, he understood the bond conditions to be a temporary order of protection [*Id*. at 15–16]. He stated that he asked ADA Takisha Fitzgerald about bond conditions being temporary orders of protection [*Id*. at 16]. He did not recall whether he spoke with ADA Fitzgerald from the scene of the stop or afterward, but he thought he had already arrested Defendant for violating his bond conditions when he spoke with her [*Id*. at 16–17]. Detective Gomez agreed he did not observe any offenses other than the traffic infractions for which he stopped the vehicle and that he did not cite Defendant for these traffic infractions [*Id*. at 17].

Detective Gomez testified that he took Defendant's cell phone and "put it in his property," and the cell phone went to the jail with Defendant [*Id*.]. He agreed that he placed Defendant's cell phone in Defendant's personal property [*Id*.]. Detective Gomez stated that he did not search Defendant's car and did not see any weapons in Defendant's car or find any on his person [*Id*.].

Detective Gomez agreed that on December 21, 2021, he took Defendant's iPhone from Defendant's personal property at the KCSO [*Id*. at 18]. He acknowledged that he did not have a search warrant at that time [*Id*.]. He also agreed that on December 23, 2021, he applied for a search

warrant for the contents of Defendant's iPhone [*Id*.]. Detective Gomez said he took Defendant's cell phone from Defendant's personal property because he was investigating Defendant's violation of an order of protection [*Id*. at 21–22]. He said when he took the phone from Defendant, he did not ask Defendant whether it would contain evidence of contact between him and Ms. Hunter because Defendant would not speak to him [*Id*. at 22]. He did not recall whether he asked Ms. Hunter about communications between her and Defendant on Defendant's cell phone [*Id*.]. Detective Gomez agreed that he retrieved Defendant's cell phone because he thought it might contain proof of communications between Defendant and Ms. Hunter [*Id*.].

At the evidentiary and motion hearing, the Court granted Defendant's request to file post-hearing briefs [*Id*. at 5]. Defendant filed a post-hearing brief on May 15, 2024 [Doc. 59]. The Government filed a responding post-hearing brief on May 29, 2024 [Doc. 62]. Thereafter, the Court took the motion and the parties' briefs under advisement.

## II.    FINDINGS OF FACT

On October 24, 2021, officers responding to a call concerning a domestic dispute arrested Defendant for domestic assault. Following Defendant's arrest, officers found a firearm on the ground near or under Defendant's vehicle. On October 26, 2021, Defendant was released on conditions, including that he have no contact with Leu Hunter, the alleged victim of the domestic assault. Magistrate Dustin Dunham of the Knox County General Sessions Court issued a CRO prohibiting contact with Ms. Hunter to include "telephoning, emailing, [or] text messaging" her. Defendant signed the Order, acknowledging that the "Order cannot be changed by agreement of the parties" and that violation of the Order could result in his immediate arrest.

Just over seven weeks later, on December 16, 2021, KPD Officer Jonathan Gomez conducted a traffic stop of a vehicle driven by Defendant and in which Ms. Hunter was a passenger.

Officer Gomez conducted an NCIC check and learned Defendant was subject to a temporary order of protection prohibiting contact with Ms. Hunter. Officer Gomez arrested Defendant for violating the order, which was a condition of his bond. Following Defendant's arrest, Officer Gomez took Defendant's cellular telephone from his hands and subsequently placed it in Defendant's property at KCSO where Defendant was detained. Five days later, on December 21, 2021, Officer Gomez obtained Defendant's cell phone from his personal property at KCSO and secured it in the KPD property unit while he applied for a search warrant.

Based upon Officer Gomez's affidavit, Knox County Criminal Court Judge Scott Green issued a search warrant for Defendant's cell phone on December 23, 2021, permitting a search of its contents for evidence of Defendant's violation of his CRO. The search of the cell phone yielded voice mail, text messages, and photographs exchanged between Defendant and Ms. Hunter, including a voicemail message in which Ms. Hunter refers to Defendant's gun.[8]

## III.  ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Warrantless seizures are unreasonable unless they fall within one of the specific exceptions to the warrant requirement. *United States v. Fletcher*, 978 F.3d 1009, 1014 (6th Cir. 2020) (citing *Riley v. California*, 573 U.S. 373, 382 (2014)).

---

[8]  The communications seized from Defendant's cell phone are listed in a second affidavit by Officer Gomez [Doc. 26 pp. 13–14]. Officer Gomez's second affidavit, which Defendant filed as an exhibit, states that the communications occurred while Defendant was subject to bond conditions prohibiting contact with Ms. Hunter [*Id*. at 14].

Defendant argues that his Fourth Amendment rights were violated when law enforcement seized his cell phone without a search warrant and retained it while obtaining a warrant. He also contends that the affidavit in support of the search warrant for the contents of his cell phone failed to establish probable cause for its issuance. He argues probable cause was lacking for two reasons: (1) the affiant made deliberately or recklessly false statements and material omissions that were essential to the issuing judge's probable cause finding; and (2) the affidavit did not provide a nexus between his cell phone and evidence of bond violations.

The Government contends the affiant had probable cause to seize Defendant's cell phone, which was already lawfully in police custody, and that the affidavit does not contain deliberately or recklessly false statements and properly provides probable cause for a search warrant. Alternatively, the Government asserts that even if the seizure of the cell phone or issuance of the search warrant contravened the Fourth Amendment, the executing officers relied on the search warrant in good faith.

The undersigned has examined the issues raised by the parties and concludes that Officer Gomez's warrantless seizure of Defendant's cell phone from Defendant and later from the KCSO property storage did not violate the Fourth Amendment. The Court also finds that Defendant fails to demonstrate that a *Franks* hearing is appropriate. Importantly, Officer Gomez's affidavit fails to provide probable cause to search the cell phone because it lacks a sufficient nexus between the phone and evidence of criminal activity. However, the Court finds that suppression is not warranted law enforcement relied on the search warrant in good faith.

### A. Seizure of Cell Phone

Defendant argues that law enforcement lacked probable cause to seize his cell phone at the time of his arrest on December 16, 2024 [Doc. 59 p. 3]. He asserts that Officer Gomez had no

information at the time of arrest that Defendant's cell phone might contain evidence of criminal activity [*Id.*]. Defendant contends that Officer Gomez then unreasonably delayed for seven days before seeking a search warrant for the contents of his phone [*Id.* at 3–4]. Alternatively, Defendant argues that Officer Gomez lacked probable cause to seize his cell phone from his personal property at KCSO on December 21, 2021 [Doc. 25 pp. 1–2; Doc. 58 p. 36]. He contends that he maintained an expectation of privacy in his belongings retained in the KCSO property storage and that Officer Gomez could not remove his cell phone from property storage without his consent or a search warrant [*Id.*].

The Government responds that Officer Gomez properly seized Defendant's cell phone when he arrested Defendant on December 16, 2021, and then placed it in "Defendant's property" at the jail [Doc. 62 p. 3]. It contends that at the time of Defendant's arrest, Officer Gomez had probable cause to believe the cell phone contained evidence that Defendant had violated his bond conditions [Doc. 29 p. 12; Doc. 62 p. 3]. The Government maintains that law enforcement could lawfully hold the cell phone and move it from one facility to another because it had a "continuing governmental interest in the property." [Doc. 29 p. 12; Doc. 62 p. 3].

The "central requirement" of the Fourth Amendment is one of reasonableness. *Texas v. Brown*, 460 U.S. 730, 739 (1983). Typically, the warrantless seizure of personal property, such as a cellular telephone, is unreasonable. *See United States v. Place*, 462 U.S. 696, 701 (1983). However, an officer may search a person incident to his or her lawful arrest and "seize contraband and any instrumentalities, fruits, or evidence of a crime that they discover in the course of the search." *United States v. Stewart,* 315 F. App'x 554, 559 (6th Cir. 2009); *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). The Court first examines the timing and nature of

the seizure of Defendant's cell phone and then determines whether that seizure was proper incident to Defendant's arrest.

### 1. Timing and Nature of Seizure

As an initial matter, the Court examines when Officer Gomez seized Defendant's cell phone. "For Fourth Amendment purposes a 'seizure of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property.'" *Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th Cir. 1999) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61, (1992) (internal quotation omitted)); *see also F.P. Dev., LLC v. Charter Twp. of Canton*, 16 F.4th 198, 208 (6th Cir. 2021) ("'[F]rom the time of the founding to the present,' when speaking of property, 'the word "seizure" has meant a "taking possession."'" (quoting *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021)). The parties agree that Defendant's cell phone was taken into police custody at the time of his arrest. The Court finds the cell phone was seized for purposes of the Fourth Amendment at this time.

The Government suggests the cell phone was seized as evidence at the time of Defendant's arrest [Doc. 29 p. 12; Doc. 62 p. 3].[9] At the evidentiary hearing, Defendant argued that his cell phone was merely retained along with his other personal effects in property storage [Doc. 58 p. 36; Doc. 59 p. 1].[10] Officer Gomez's testimony reveals that although Defendant's cell phone was

---

[9]     The Government cites to Federal Rule of Criminal Procedure 41(g), which provides in pertinent part that if a court grants a defendant's motion for return of seized property, it "may impose reasonable conditions to protect access to the property and its use in later proceedings." It also cites to *Sovereign News Co. v. United States*, in which the Court held that government may retain records or copies of records following conclusion of criminal proceedings when it has a "continuing interest," which "can include a criminal or tax investigation in progress." 690 F.2d 569, 577 (6th 1982).

[10]     Defendant also argues that Officer Gomez's initial seizure of his cell phone on December 16, 2021, violated the Fourth Amendment because the officer lacked probable cause to believe it contained evidence of a crime [Doc. 59 pp. 3–4]. Defendant, however, does not challenge the

taken into police custody at the time of his arrest, it was not seized as evidence at that time. On direct examination, Officer Gomez testified that following Defendant's arrest, Defendant's cell phone was placed in his personal property at the jail:

> [Prosecutor:] Did you take his phone?
>
> [Officer Gomez:] I did.
>
> [Prosecutor:] What did you do with his phone?
>
> [Officer Gomez:] It went with him to the jail.
>
> [Prosecutor:] Was it in his personal property?
>
> [Officer Gomez:] I believe so.

[Doc. 58 p. 12]. On cross-examination, Officer Gomez confirmed that he took Defendant's cell phone at the time of his arrest and the cell phone was transported to the jail, where Officer Gomez placed it in Defendant's "property" [*Id*. at 17]. Officer Gomez, who worked for the KPD, acknowledged that on December 21, 2021, he took Defendant's cell phone from Defendant's personal property at the KCSO (a separate law enforcement agency) and that he did not have a search warrant at that time [*Id*. at 18]. Officer Gomez's affidavit corroborates this testimony, stating he later "confiscated" Defendant's cell phone from its location in Defendant's property at the Knox County Sheriff's Detention Facility and secured it in the KPD property unit [Doc. 26 ¶8]. Officer Gomez never testified that he retained Defendant's cell phone as evidence or logged it into storage as evidence.

---

validity of his arrest on December 16, 2021. Nor does he seem to challenge that law enforcement could take custody of his personal property and retain it in property storage once he was arrested. Thus, the Court need not address whether Officer Gomez had probable cause to seize Defendant's cell phone as evidence on December 16, 2021.

Based upon this testimony, the Court concludes that law enforcement seized Defendant on December 16, 2021, when Officer Gomez arrested him. At that time, Officer Gomez took Defendant's cell phone into police custody along with Defendant and placed it into the KCSO's property storage. Five days later, Officer Gomez "confiscated" Defendant's cell phone from KCSO's property storage and secured it in the KPD's property unit. This act does not constitute a separate seizure. *See Fox*, 176 F.3d at 351 ("Once that act of taking the property is complete, the seizure has ended[,] and the Fourth Amendment no longer applies."). In *Fox*, the court held law enforcement seized plaintiff's driver's license during an inventory search of an associate's truck, and the subsequent refusal to return the license to plaintiff was not a second seizure. *Id*. Similarly, in *Langston v. Charter Township of Redford*, the court held that law enforcement lawfully seized plaintiff's watch and a bag of currency from his person and car incident to his arrest for wire fraud and that plaintiff could not challenge the subsequent administrative forfeiture of the currency as a second seizure under the Fourth Amendment. 623 F. App'x 749, 760–61 (6th Cir. 2015).

Additionally, the Court finds that although Officer Gomez recognized the phone's evidentiary value on December 21, 2021, he did not log Defendant's cell phone into evidence storage and, thus, Defendant was still entitled to its return if he were released from custody. Two days later, Officer Gomez obtained a search warrant. The Court turns to the propriety of the seizure under the Fourth Amendment in the next section.

### 2. Seizure Incident to Arrest

"Relevant to the present case, the law is well established that when police make an arrest, they may search 'the arrestee's person and the area "within his immediate control"' without obtaining a warrant." *United States v. Buford*, 632 F.3d 264, 267–68 (6th Cir. 2011) (quoting

*Chimel v. California*, 395 U.S. 752, 763 (1969)).  The reasoning behind this exception to the warrant requirement is to permit the seizure of weapons that the arrestee could use to resist or escape and evidence that he or she could conceal or destroy.  *Id.*

The Sixth Circuit has recently affirmed a delayed seizure of cellular telephones incident to arrest after the defendant had been transported to the police station and booked.  *United States v. Salaam*, No. 21-35662024 WL 3163256, at *4 (6th Cir. June 25, 2024).  In that case, defendant was arrested for interference with custody and contributing to the delinquency of a minor for harboring a sixteen-year-old runaway in his hotel room.  *Id.* at *2, 4.  After defendant was transported to the police station, the minor informed police that defendant had taken pornographic photographs of her with her cell phone, which was in defendant's possession, and posted them on a website advertising prostitution.  *Id.* at *2.  An officer then confronted defendant in the booking area and "told him they needed to hold onto the three phones [defendant] was carrying, including [the minor's cell phone]."  *Id.*  Defendant objected but ultimately "surrendered the phones" after closing some accounts on the phones and locking the minor's phone.  *Id.*  The minor unlocked her phone and showed officers the images, after which the officers obtained search warrants for all three cell phones.  *Id.*  Defendant moved to suppress evidence seized from his two cell phones, arguing they were unlawfully seized.  *Id.* at *3.  The Court upheld the seizure of defendant's cell phones incident to his arrest, finding that he was still "under arrest when the police obtained his phones."  *Id.* at *4.

Here, Defendant argues that he retained an expectation of privacy in his cell phone while it was stored in his "personal property" at the KCSO [Doc. 58 p. 36].  In support of his continued privacy interest, he contends that although he did not have custody of his phone, the KCSO could not release it to a third party without his permission [*Id.*].  Relying on *United States v. Waldrip*,

No. 4:18-cr-00163-RGE-CFB-2, 2019 WL 13143479, at *7 (S.D. Iowa Apr. 3, 2019), he argues that the seven-day delay in Officer Gomez seeking a search warrant for his cell phone after his arrest was unreasonable [Doc. 59 p. 4].

"Once a lawful arrest is made, the suspect and any 'effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest . . . and the taking of the property for use as evidence.'" *United States v. Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (quoting *United States v. Edwards*, 415 U.S. 800, 807 (1974)) (emphasis added). "This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial." *Edwards*, 415 U.S. at 807. In *Edwards*, defendant's clothing worn at the time of his arrest and detention was taken from him the following day and subjected to laboratory analysis. *Id*. at 801–02. The Supreme Court observed that an arrestee may be searched incident to his arrest at the scene of the arrest or after transport to the detention facility. *Id*. at 803; *see also Smith*, 549 F.3d at 360–61 (affirming the seizure of drugs contained in a sock hidden in defendant's underwear because defendant could be searched incident to arrest after he was transported to the police station). "Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial." *Id*. at 803–04. The Court reasoned the defendant was no more "imposed upon" when the evidence was seized after a "reasonable delay" than at the time of arrest or detention. *Id*. at 805.

Law enforcement's subsequent search of an arrestee's effects is still subject to the Fourth Amendment's requirement of reasonableness. *Id*. at 808 & n.9; *see, e.g., United States v. Grant*,

920 F.2d 376, 389 (6th Cir. 1990) (holding search of "deplaned" arrestee's luggage after its arrival in another state was not incident to his arrest and required a search warrant); *see also Preston v. United States*, 376 U.S. 364, 367–68 (1964) (holding search of an impounded vehicle after the defendants were arrested and taken to the police station was "too remote in time or place to have been made as incidental to the arrest"). Here, unlike in *Salaam*, law enforcement had already lawfully seized Defendant's cell phone incident to his arrest before Defendant's arrival at the jail for booking. When Officer Gomez moved Defendant's cell phone from KCSO's property storage to KPD's property unit, it never left police custody and was continuously maintained in property storage. Officers did not attempt to search the phone without a warrant. In other words, the record is devoid of evidence that law enforcement infringed upon Defendant's privacy interest in his cell phone even though it maintained possession of his phone.

Defendant argues the delay in seeking a search warrant further interfered with his possessory interest in his cell phone [Doc. 59 p. 4]. Typically, the greater the length of time law enforcement retains possession of an item before seeking a search warrant, "the greater the infringement on the person's possessory interest[.]" *Waldrip*, 2019 WL 13143479, at *6 (internal quotation omitted). Defendant, however, remained in custody during the time his cell phone was retained in property storage. Thus, unlike in *Waldrip*, where the defendant was not in police custody during the five days law enforcement held his cell phone before getting a search warrant, *id.* at * 6–7, Defendant Smith could not have otherwise possessed his phone. Nor is there any evidence that Defendant sought the return of his cell phone or its release to another person but was denied. Accordingly, the seven-day delay in obtaining a search warrant was not unreasonable.

In summary, Defendant's cell phone was properly seized incident to his arrest on December 16, 2021, and placed in property storage. The retention of Defendant's cell phone in property

storage without searching it caused no greater imposition on Defendant's privacy or possessory interests than the initial seizure and, thus, was not unreasonable. Accordingly, the seizure of Defendant's cell phone does not violate the Fourth Amendment.

## B. Sufficiency of Search Warrant

A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Here, Defendant contends that Officer Gomez's affidavit failed to provide probable cause for two reasons: (1) the affidavit contains a false statement or material omission that is necessary to probable cause, and (2) the affidavit fails to establish a nexus between his cell phone and the alleged bond violation.

An issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (also quoting *Gates*). This deferential standard promotes a preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners

of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13. Thus, the Supreme Court has observed that "probable cause is a flexible, common-sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Brown*, 460 U.S. at 742. In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238. With these principles in mind, the Court turns to the search warrant in this case.

## 1. Franks Challenge

Defendant argues that Officer Gomez's affidavit contains both a false statement and a material omission, which the affiant made or omitted with a reckless disregard for the truth [Doc. 25 pp. 2–5]. Specifically, he contends that the affidavit contains a false statement because it characterizes the CRO as a "temporary order of protection" [Doc. 58 p. 26]. He asserts that he could only receive revocation of his bond and contempt of court for violating the CRO, whereas the affidavit indicates that Officer Gomez was investigating an offense [*Id.* at 26, 29–30]. Accordingly, Defendant argues that the affiant "falsely represented the remedy for [the] violation of that order [(the CRO)]," [*Id.* at 30].[11] Defendant also contends that Officer Gomez's failure to

---

[11] The Court invited Defendant to explain his arguments regarding the alleged false statement and material omission in his post-hearing brief [Doc. 58 p. 31]. Defendant, however, did not revisit this issue in his post-hearing brief [*See* Doc. 59].

include information constituting probable cause in the affidavit constitutes a material omission [*Id.*].

As discussed above, the reviewing court's evaluation of whether an affidavit establishes probable cause is typically limited to only the information that was before the issuing judge, *i.e.*, only what is contained within the four corners of the supporting affidavit. *Brooks*, 594 F.3d at 492. "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

"A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). The affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171. A defendant seeking a *Franks* hearing, "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). The defendant must make a substantial showing of the affiant's culpability, *i.e.*, that the affiant deliberately or recklessly made the false statement. *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations. *Bateman*, 945 F.3d at 1008 (6th Cir. 2019). "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Crawford*, 943 F.3d at 309.

Material omissions may also merit a *Franks* hearing in certain circumstances; however, "an affidavit which omits potentially exculpatory information is less likely to present a question

of impermissible official conduct than one which affirmatively includes false information." *United States v. Adkins*, 107 F.3d 1213, 1217 (6th Cir. 1997). An affidavit does not have to include all facts gathered during the investigation. *Id.* Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). The purpose of this heightened standard for omissions is to prevent "'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Adkins*, 107 F.3d at 1217.

Here, the Court finds that Defendant fails to show either a material false statement or a material omission.

Defendant contends that the affidavit falsely implies that Officer Gomez was investigating a criminal offense, rather than a bond violation [Doc. 25 pp. 2–3; Doc. 58 pp. 26, 29–30]. The affidavit states as follows:

> Based on the above listed information, observations and training, your affiant has probable cause to believe that the herein described device desired to be searched was being used by persons in violation of the laws in Tennessee Code Annotated [§] 40-11-150, that is a violation of conditional release order, and that the above described cellular telephone do[es] now contain evidence of said offenses [sic.].

[Doc. 26 p. 4]. The cited statute governs conditional release of persons arrested for domestic assault, child abuse, elder abuse, or stalking. Tenn. Code Ann. § 40-11-150(a). Subsection (i) states that "[a] person who violates a condition of release imposed pursuant to this section shall be subject to immediate arrest with or without a warrant[.]" Tenn. Code Ann. § 40-11-150(i)(1). The punishment for such violation turns upon whether it also violates a "protective order":

> (i)(1) . . . . If the violation of the condition of release also constitutes the offense of violation of a protective order as prohibited by § 39-13-113, the person *shall be charged with the offense*, and the bail of the person violating the condition of release may be revoked by the court having jurisdiction of the offense.

> (2) If the violation of the condition or release does not also constitute a violation of § 39-13-113, the release condition violation shall be punished as contempt of the court imposing the conditions, and the bail of the person violating the condition of release may be revoked.

*Id*. (emphasis added).

Defendant argues that the CRO is not a "protective order" for which a violation qualifies as an offense because such orders must be initiated by a petition from the victim of the domestic assault [Doc. 25 p. 3 (citing Tenn. Code Ann. § 39-13-111)]. As the Government points out [Doc. 29 p. 5], however, "[i]t is an offense to knowingly violate a no contact order, issued prior to a defendant's release on bond, following the defendant's arrest for any criminal offense defined in this chapter, in which the alleged victim of the offense is a domestic abuse victim as defined in § 36-3-601." Tenn. Code Ann. § 39-13-111(i). Here, the CRO expressly states that it is a "NO CONTACT order" and lists Defendant's offense as "DOMESTIC ASSAULT" [Doc. 26 p. 6].[12]

---

[12]      The judge issuing the CRO did not check the line on the form indicating that defendant had been arrested for a criminal offense against a domestic abuse victim and that probable cause exists to believe the defendant caused serious bodily injury to the victim or used or displayed a deadly weapon [Doc. 26 p. 6]. Aside from the victim being a "domestic abuse victim," such findings are not required for a no-contact order. *See* Tenn. Code Ann. § 39-13-111(i).

Ms. Hunter appears to qualify as a "domestic abuse victim" because at the time of Defendant's arrest for domestic assault, she and Defendant were apparently living together or had lived together [*See* Doc. 24 p. 1 (Defendant was arrested "on the front porch of his residence."); Doc. 29 p. 2 ("As officers approached him, Defendant ran towards the victim's front door[,]" where he was arrested]. *See* Tenn. Code Ann. § 36-3-601(5)(B). The undersigned acknowledges that the judge issuing the CRO did not make a finding that Ms. Hunter was a domestic abuse victim [*See* Doc. 26 p. 6].

Even if violation of the CRO was not a separate offense, a *Franks* hearing is not warranted. Officer Gomez attached a copy of the CRO to his affidavit for the issuing judge's review. The Court finds no evidence that the affiant intentionally or recklessly attempted to mislead the issuing judge. Moreover, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003). Thus, even if the affiant misrepresented the seriousness of the bond violation under investigation (it does not appear that he did), such misrepresentation is not material to probable cause.

Regarding the alleged omission, Defendant essentially argues that the affiant deliberately or recklessly withheld information that would have supported probable cause and, instead, provided only his hunch or speculation that evidence of bond violations would be on Defendant's cell phone. Such conduct would have reduced, rather than unfairly enhanced, the affiant's chance of obtaining a search warrant. As discussed in the next section, the probable cause for issuance of

24

the search warrant is lacking, but Defendant fails to show that this was by the affiant's purposeful design.[13]

In summary, the undersigned finds that Defendant fails to carry his burden of showing the affiant deliberately or recklessly included a false statement or omitted information necessary to probable cause. Defendant's request that the evidence be suppressed on this basis must be denied.

## 2. Nexus

Defendant also argues that Officer Gomez's affidavit fails to provide a nexus between the alleged bond violation and Defendant's cell phone [Doc. 25 p. 25]. Instead, he contends that all Officer Gomez offers is his "hunch" or "speculation" that because Defendant and Ms. Hunter were together in his car, they also likely communicated by phone or text [Doc. 58 p. 23; Doc. 62 p. 2]. The Government argues that the affidavit provides a nexus between the bond violation and Defendant's cell phone because it states that Defendant had an active CRO prohibiting him from contacting Ms. Hunter, Ms. Hunter told the officer that she and Defendant did not live together, the Defendant and Ms. Hunter were in the car together, and, thus, they had to have communicated, most likely by phone, in order to arrange to be in the car together [Doc. 29 pp. 9–10; Doc. 58 pp. 24–25].

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)

---

[13]    In his motion, Defendant states that "Officer Gomez omits the fact that he seized the iPhone, without a search warrant or a court order, from Mr. Smith's property at the Knox County Sheriff's detention facility [Doc. 25 p. 2]. However, during oral argument, the Government emphasized that the affidavit states that he "retrieved" and "confiscated" the Defendant's cell phone, which was originally placed into Larico Smith's property and processed by the Knox County Detention facility[,]" and "secured [it] at the KPD Property Unit" [Doc. 26 ¶8]. Accordingly, the undersigned finds no omission of the location from whence the cell phone was seized.

(*en banc*).  Probable cause requires a "'nexus between the place to be searched and the evidence sought.'"  *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).  "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"  *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595).  Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.*  The "nexus [between the location to be searched and the evidence sought] can be inferred from 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'"  *United States v. Elbe*, 774 F.3d 885, 889 (6th Cir. 2014) (quoting *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008)).  The Court must determine "'whether the [issuing judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'"  *United States v. Merriweather*, 728 F. App'x 498, 504 (6th Cir. 2018) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

Here, Officer Gomez's affidavit states that after Defendant was arrested, officers spoke with Ms. Hunter who said she did not live with Defendant and did not know that he was prohibited from being around her [Doc. 26 ⁋7].  The affidavit further relates that "based on your affiant's experience, he knows that most people use cell phone[s] as their primary communication devices" and "since [Defendant] and Leu Hunter do not live together, then it is reasonable to believe that [Defendant] used his cell phone to communicate with Leu Hunter in order to establish a meeting site, pick-up location, or other communication to get her to ride with him " [*Id.*].  Finally, the affidavit describes Officer Gomez's training and experience, which includes "numerous

investigations" of domestic violence, domestic assault, and violations of orders of protection [*Id.* at ¶1]:

> Through training and experience, your affiant knows that telephone communication is an integral part of everyday life. Your affiant knows that individuals who violate conditional release[] orders will use their cellular device to communicate with the victim through third-party applications, text messages, phone calls, emails, and other electronic means that may be stored on the cellular phone. Your affiant also knows that a person who violates a conditional release order will store other communication in the furtherance of violating a conditional release order. Your affiant also knows that individuals who violate conditional release orders will take photographs with the victim and store them on their phones.

[*Id.* at ¶9]. Based upon finding Defendant and Ms. Hunter together in Defendant's car, the fact that they do not live together, and his training and experience regarding persons who violate CRO's, Officer Gomez opined that evidence of Defendant's violations of his CRO would be found on his cell phone [*Id.*].

Courts have declined to find an officer's experience that individuals use cellular phones to communicate regarding criminal activities and a defendant's possession of a cell phone at the time of his arrest without more to be a sufficient nexus. *Merriweather*, 728 F. App'x at 506 (analyzing *United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016)); *see also United States v. Lavallis*, 515 F. Supp. 3d 686, 691 (E.D. Mich. 2021). However, "when the affidavit contains more—in particular, a factual basis to support a conspiracy or coordinated activity—a search of a member's cell phone is not unreasonable." *Id.* For example, in *Merriweather*, the affidavit also alleged conspirators set up two controlled buys with the subject cell phone and that cell phone was seized from a vehicle containing drugs. 728 F. App'x at 506.

In *United States v. Bass*, the court emphasized that nexus required a showing that evidence of criminal activity would be found on "this particular" cell phone. 785 F.3d 1043, 1049 (6th Cir.

2015). There, in addition to the affiant's statement that defendant "was suspected of crimes in which 'cell phones were frequently used by conspirators to text or call each other during the times that the fraudulent activity was taking place[,]'" the affidavit stated that defendant and his co-conspirators frequently communicated by cell phone and that upon the officers' arrival at defendant's location to arrest him, he texted on his cell phone, which was the subject of the search warrant, ostensibly alerting his co-conspirators to law enforcement's presence and his imminent arrest. *Id*.

An affidavit's description of "multiple drug runs where [a conspirator] met different individuals at various locations and times to receive or distribute controlled substances . . . gives rise to a common sense inference that [the individual] and others coordinated their actions and used their cell phones to do so." *United States v. Metzger*, No. 5:21-cr-885, 2022 WL 3597883, at *6 (N.D. Ohio Aug. 23, 2022). However, in *Metzger*, the court questioned whether this inference, along with defendant's communication with a co-conspirator on social media presumably also with a cell phone, were sufficient to demonstrate a "fair probability" that evidence of drug trafficking would be found on defendant's cell phone. *Id*. (declining to decide the close case of whether the affidavit provided probable cause to search defendant's cell phone because the officers relied on the search warrant in good faith).

Here, the inference championed by the Government (that Defendant's cell phone likely contained evidence of his bond violation because people in general use cell phones to communicate) would apply in nearly every instance thereby eviscerating the Fourth Amendment's probable cause requirement. In *Riley v. California*, the Supreme Court recognized that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person" because they perform many functions, store vast amounts of data on "all

aspects of a person's life," and make that data readily portable and constantly present. 573 U.S. at 393, 395–96. In rejecting the government's proposal of permitting a warrantless search of an arrestee's cell phone whenever the officer had probable cause to believe the phone contained evidence of a crime, the Court observed that "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Id*. at 399.

Also, unlike in the drug conspiracy cases, a conspiracy requiring coordination between multiple actors is not alleged. *C.f.*, *United States v. Griffin*, No. 2:17-CR-20639-TGB-MKM, 2022 WL 2072042, at *3 (E.D. Mich. June 8, 2022) ("Courts have recognized the importance of cell phones in coordinating criminal enterprises, particularly drug trafficking conspiracies."). Nor does the affidavit provide any evidence that Defendant and Ms. Hunter previously communicated by cell phone. Thus, the alleged nexus here arises primarily from Officer Gomez's experience. Officer Gomez, however, had no knowledge that Defendant called or texted Ms. Hunter to arrange for her to ride with him, rather than simply driving to her location or encountering her in person. Nothing about the offense under investigation (violation of bond conditions or even domestic assault) indicated use of a cell phone. Nor did Officer Gomez ask Ms. Hunter how she happened to be in Defendant's vehicle. Accordingly, the Court finds that Officer Gomez lacked probable cause to believe Defendant's cell phone contained evidence of a crime.

The fact that people frequently communicate by call or text is too tenuous a link by itself to connect evidence of bond violations and Defendant's cell phone. The additional facts that Defendant and Ms. Hunter were found in the car together despite living separately and Officer Gomez's experience that evidence of bond violations is frequently found on cell phones fails, albeit barely, to clear the probable cause hurdle.

### 3. Good Faith Exception to the Exclusionary Rule

The Government maintains that the Court should not apply exclusionary rule in this case because law enforcement reasonably relied on the search warrant in good faith [Doc. 29 pp. 14–15]. "The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). The exclusion of evidence for a Fourth Amendment violation is not a right, but instead, the exclusionary rule is employed "only where it 'result[s] in appreciable deterrence.'" *Id*. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Accordingly, "[t]o trigger the exclusionary rule, the police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144.

In *Leon*, "the Supreme Court held that judicial suppression is inappropriate when an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid." *United States v. Neal*, No. 23-5299, 2024 WL 3249640, at *2 (6th Cir. July 1, 2024) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)); *see also United States v. Herring*, 555 U.S. 135, 141–42 (2009) (rejecting automatic exclusion of evidence and, instead, asking whether exclusion will provide "appreciable deterrence"). The reason for the good-faith exception is because "'[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.'" *United States v. White*, 874 F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921); *see also Neal*, 2024 WL 3249640, at *2 (observing that when the judge "is the blameworthy party [and] . . . the officer's conduct lacks any ill motive, the deterrent value of excluding evidence is minimal").

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. "Where an officer anchors his conduct to a so-called 'bare-bones affidavit,' the officer acts recklessly, rather than in good faith, and thus remains blameworthy for conducting the search." *Neal*, 2024 WL 3249640, *2 (citing *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021)). To avoid falling in the bare-bones category, the affidavit must have a "minimally sufficient nexus." *Id*. (quoting *White*, 874 F.3d at 496–97). A bare-bones affidavit is based only upon the officer's hunch or states only conclusions or is devoid of facts. *Id*. at *3. In contrast, "'[s]ome modicum of evidence, however slight[, ]between the criminal activity at issue and the place to be searched'" will support an officer's good-faith belief in the existence of probable cause. *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 496). Only when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed.[14] *Neal*, 2024 WL 3249640, *2 (quoting *Leon*, 468 U.S. at 923). In other words, "where it is simply debatable whether probable cause exists, an officer is justified in relying on a judicial finding of probable cause." *Id*. at *3 (observing that "'entirely unreasonable' . . . is a low bar").

Here, Officer Gomez's affidavit contains the required "minimally sufficient nexus." Officer Gomez observed Defendant violating the no-contact order by being in his car with Ms. Hunter. The affidavit states that Ms. Hunter told the officers that she and Defendant did not live

---

[14] The good-faith exception is not available if the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 922. Here, the undersigned finds that the issuing judge was not misled by the affiant's representations on the reason for the search.

together. Moreover, she stated that she was not aware that Defendant was prohibited from being around her. Finally, the affidavit outlines Officer Gomez's experience that individuals violate their conditions of release by electronic means such as texting. From this information, Officer Gomez infers that Defendant violated the CRO by calling or texting Ms. Hunter in addition to being in his car with her. Thus, although the affidavit is deficient in probable cause, the evidence seized in the execution of the search warrant should not be suppressed.

IV.     **CONCLUSION**

Defendant agrees that his Motion to Suppress Statements is moot because the Government will not use any statements made at the time of his October 24, 2021 arrest at trial. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Statements [Doc. 24] be denied as moot.

Regarding Defendant's motion to suppress evidence seized from his cellular telephone, the undersigned finds that Officer Gomez properly seized Defendant's cell phone and placed it in property storage until he obtained a search warrant. However, the affidavit in support of the search warrant for Defendant's cell phone lacked probable cause because it did not provide a sufficient nexus between the evidence sought and the location to be searched. Despite this deficiency, law enforcement searched Defendant's cell phone in good faith reliance on the search warrant. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to

Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25] be denied.[15]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[15] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).