IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
                                     )
v.                                   )            No. 3:22-CR-57-TAV-DCP
                                     )
LARICO LAMAR SMITH,                  )
                                     )
                Defendant.           )

## REPORT AND RECOMMENDATION

This case is before the undersigned for report and recommendation on Defendant Larico

Smith's Motion to Dismiss Indictment under the Second Amendment [Doc. 21]. *See* 28 U.S.C. §

636(b). Defendant is charged in a single-count Superseding Indictment alleging he is a

convicted felon who possessed a firearm and ammunition on October 24, 2021, in violation of 18

U.S.C. § 922(g)(1) [Doc. 39 p. 1]. Defendant argues that § 922(g)(1) is unconstitutional because

it impinges upon the Second Amendment's protection of an individual's right to bear arms. He

contends that his possession of a firearm is presumptively protected by the Second Amendment

without regard to his status as a convicted felon and that laws banning the possession of firearms

by persons previously convicted of crimes lack a historic basis in the founding era. Accordingly,

Defendant contends the Indictment must be dismissed because § 922(g)(1) violates the Second

Amendment as people understood that right at the time it was adopted.

For the reasons discussed herein, the undersigned finds § 922(g)(1) remains constitutional

in the wake of recent Supreme Court and Sixth Circuit case law and is constitutional as applied

to Defendant Smith's possession of a firearm on October 24, 2021. Accordingly, the Court

respectfully recommends that Defendant's motion to dismiss [Doc. 21] be denied.

# I.    BACKGROUND

According to the Government, officers responding to a domestic dispute observed Defendant standing beside his vehicle [Doc. 52 p. 1].  The officers later found a loaded firearm on the ground beside Defendant's vehicle at the location where Defendant had been standing [*Id*.].  Based upon these circumstances, Defendant was charged with being a felon in possession of a firearm and ammunition [Docs. 1, 39].

Defendant's prior criminal history includes a conviction for voluntary manslaughter in 1995 [Doc. 52 pp. 1–2].[1]  Defendant has five felony convictions for aggravated assault, three of which involve use of a gun [*Id*. at 2].[2]  In May 2004, Defendant entered a guilty plea in this Court to being a felon in possession of ammunition and a felon in possession of a firearm and ammunition [No. 3:03-CR-100, Doc. 57, Minutes].[3]  Defendant was sentenced to 151 months of imprisonment for his two 2004 federal felony convictions [Doc. 52 p. 2].

---

[1]    The Court takes Defendant's criminal history from the Government's supplemental response [Doc. 52 pp. 1–2].  This criminal history is corroborated by records from Defendant's prior federal case, No. 3:03-CR-100, particularly his Presentence Report, and by the Pretrial Services Report prepared in this case.  Defendant's prior Presentence Report, which is not filed in case number 3:03-CR-100 but was provided to the undersigned with the Pretrial Services Report in this case in preparation for a detention hearing that was ultimately waived, states that Defendant has a state conviction from May 30, 1995, for involuntary manslaughter for shooting the victim with a handgun.

[2]    Defendant's Presentence Report from case number 3:03-CR-100 reveals that Defendant's aggravated assault convictions are from 1995 (serious bodily injury with a beer bottle), 2002 (shot victim in knee), and three convictions from 2006 (shot at victims striking one in back).

[3]    The factual basis for Defendant's plea agreement in case number 3:03-CR-100 (as recounted in the Presentence Report) states Defendant knocked a victim to the ground and shot him in the leg on September 22, 2002; shot at three victims on January 18, 2003, striking one in the back; engaged in a gun fight on June 20, 2003 in which a bystander was shot in the foot and leg; and was arrested with two firearms on August 5, 2003.  These incidents, which occurred in 2002 and 2003, appear to form the basis for Defendant's state aggravated assault convictions from 2006.

Defendant proffers that following his release from serving his federal sentence on August 22, 2017, he successfully completed a three-year term of supervised release [Doc. 64 p. 4]. From that time until his October 25, 2021 arrest on the state charges underlying this case, he worked for the Knoxville Area Transit Authority as a bus driver [*Id.*; *see also* Doc. 60 p. 1].

Defendant moves to dismiss the Indictment, which charges him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) [Doc. 21]. Relying on the test announced in *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022), Defendant argues that his conduct is presumptively protected because possession of a firearm comes within the plain text of the Second Amendment [*Id.* at 2, 10–12], and the Government cannot rebut this presumption because felon-disarmament laws were unknown in the founding era and have no historical analogue [*Id.* at 2, 10, 12–15]. He maintains that pre-*Bruen* Supreme Court dicta on felon-disarmament laws was superseded by the test announced in *Bruen* and does not bind this Court [*Id.* at 15–23]. Defendant also contends that the protections afforded by the Second Amendment are not limited to "law-abiding" individuals [*Id.* at 23–26]. Accordingly, Defendant asserts that § 922(g)(1) "violates the Second Amendment as it was understood at the time of its adoption" requiring that his Indictment be dismissed [*Id.* at 27].

The Government responds in opposition, asserting that § 922(g) is presumptively lawful under pre-*Bruen* Supreme Court and Sixth Circuit precedent, which was not altered by the *Bruen* case [Doc. 30 pp. 1, 3–5; Doc. 52[4] pp. 2–8]. It also asserts that convicted felons do not enjoy the

---

[4]    Defendant moved to dismiss the Indictment on September 25, 2022 [Doc. 21], and the Government filed an initial response on October 21, 2022 [Doc. 30]. Thereafter, the Court granted the parties' numerous requests to continue the motion hearing on this and other defense motions to allow the parties to pursue plea negotiations and to accommodate a witness [*See* Docs. 32, 36, 38, 43, 45, 47, 49, 51, & 54]. The Government filed a Supplemental Response in Opposition to Defendant's Motion to Dismiss [Doc. 52] on February 6, 2024, to update the case law and reasoning in its initial response.

3

protections of the Second Amendment, which is expressly limited to law-abiding citizens [Doc. 30 pp. 5–7; Doc. 52 pp. 9–10]. The Government maintains, however, that even if felons were considered part of "the people" protected by the Second Amendment, felon disarmament is consistent with this country's historical tradition of limiting the civic rights of those convicted of serious crimes [Doc. 30 pp. 8–10]. It also provides historical analogues (English laws, Revolutionary-War-era laws, ratification proposals, and the punishments for felonies at the time of the founding), which it argues demonstrate that § 922(g)(1) is consistent with this Nation's historical tradition of firearms regulation [Doc. 52 pp. 10–15].

The parties appeared for a motion hearing on March 27, 2024 [Doc. 58, Transcript]. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Randall E. Reagan represented Defendant Smith, who was also present. At the hearing, defense counsel asked to update his motion in a post-hearing brief in lieu of argument [*Id*. at 5]. Government's counsel did not object [*Id*. at 5–6]. The Court granted this request [*Id*. at 6]. On May 15, 2024, Defendant filed a post-hearing brief directing the Court's attention to three recent cases [Doc. 60]. The Government filed its post-hearing brief on May 29, 2024, distinguishing the cases cited by Defendant [Doc. 61]. After receiving all filings, the Court took the matter under advisement.

On June 21, 2024, the United States Supreme Court decided that 18 U.S.C. § 922(g)(8) is constitutional under the Second Amendment both facially and as applied. *United States v. Rahimi*, 144 S. Ct. 1889, 1902–03 (2024). Recognizing the potential relevance of the *Rahimi* decision to the issues raised by Defendant, the undersigned ordered the parties to file supplemental post-hearing briefs applying the *Rahimi* decision to Defendant's challenge to the constitutionality of § 922(g)(1) under the Second Amendment [Doc. 63 p. 2]. Defendant filed a

supplemental brief on July 9, 2024 [Doc. 64]. The Government filed its supplemental and responding brief on July 22, 2024 [Doc. 73], and Defendant filed a reply on August 9, 2024 [Doc. 78]. The Court again took the motion and all related filings under advisement.

## I.     ANALYSIS

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const., Amt. II. In *New York State Rifle & Pistol Assoc. v. Bruen*, the Supreme Court clarified the test for determining whether a firearm regulation violates the rights guaranteed by Second Amendment. 597 U.S. 1, 24 (2022). "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. If the regulated conduct is covered by the Second Amendment, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

Defendant Smith challenges the constitutionality of § 922(g)(1), which bans felons from possessing firearms [Doc. 21 p. 2]. He raises a facial challenge to the statute, arguing that felons as a class are a part of "the people" protected by the Second Amendment [*Id*. at 10, 25–27]. Defendant also contends that § 922(g)(1) is unconstitutional as applied to him because it imposes a permanent ban on his possession of firearms with no determination that he presents a danger [Doc. 64 pp. 1, 4; *see also* Doc. 60 p. 1 (contending Defendant is "similarly situated" to a defendant bringing an as-applied challenge in a cited case)].

A defendant may challenge a defect in an indictment, including the constitutionality of a charged offense, by pretrial motion so long as "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P.

5

12(b)(3)(B); *United States v. Bivens*, No. 1:22-cr-23, 2023 WL 8101846, at *1 (E.D. Tenn. Nov. 21, 2023) (analyzing an as-applied challenge to § 922(g)(1)). A law can be unconstitutional either on its face or as applied. *Id*. "A statute is facially unconstitutional 'if it is unconstitutional in all its applications.'" *Id*. (quoting *Wash. State Grange v. Wash. State Repub. Pty*, 552 U.S. 442, 449 (2008)). "A facial challenge is the 'most difficult challenge to mount successfully' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Williams*, No. 23-6115, ___F.4th___, 2024 WL 3912894, at *1 (6th Cir. Aug. 23, 2024) (quoting *Rahimi*, 144 S. Ct. at 1898 (internal quotation omitted)).

An as-applied challenge, on the other hand, argues the statute is unconstitutional in its application to a particular defendant's alleged conduct. *Speet v. Schuett*, 726 F.3d 867, 872 (6th Cir. 2013); *Bivens*, 2023 WL 8101846, at *1. In addressing a pretrial motion to dismiss a charge, the Court takes the facts alleged in the charging instrument as true and "do[es] not test the evidence behind [the government's] claims." *United States v. Palma*, 58 F.4th 246, 250 (6th Cir. 2023); *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

The undersigned first examines the changes to Second Amendment jurisprudence wrought by *Bruen* before turning to whether *Bruen* alters the constitutionality of § 922(g)(1) either generally or as applied to Defendant Smith. The answer to both questions is no.[5]

---

[5]    The undersigned recently analyzed facial and as-applied constitutional challenges to § 922(g)(1) in *United States v. Keller*, 3:24-CR-5-TAV-DCP, Doc. 34 (E.D. Tenn. June 12, 2024) (report and recommendation). Some of that analysis is repeated here; however, recent case law including the Sixth Circuit's decision in *United States v. Williams*, 2024 WL 3912894, decided on August 23, 2024, have altered that analysis, along with the addition of the specific arguments and circumstances unique to Defendant Smith. Despite changes to the analysis, the undersigned reaches the same result as in *Keller* that § 922(g)(1) is constitutional both facially and as applied.

6

### A. Second Amendment Jurisprudence

In *District of Columbia v. Heller*, the Supreme Court explained that the rights afforded by the Second Amendment are not restricted to service in a militia, but the Second Amendment confers an individual right to "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008); *Williams*, 2024 WL 3912894, at *1 (emphasizing that *Heller* "held that the Second Amendment codified a pre-existing 'individual right'"). "Like most rights, [however,] the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Thus, the Supreme Court recognized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," and it characterized statutes prohibiting possession of firearms by felons as "presumptively lawful regulatory measures[.]" *Id.* at 626–27 & n.26. Two years later, the Supreme Court held the Fourteenth Amendment incorporated the Second Amendment right recognized in *Heller*. *McDonald v. Chicago*, 561 U.S. 742, 791 (2010). There, the Supreme Court repeated its "assurances" from *Heller* "that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626–27)).

After the Supreme Court's decision in *Heller*, the Sixth Circuit adopted a two-part test for evaluating the constitutionality of a firearms regulation. *United States v. Greeno*, 679 F.3d 510, 518–19 (6th Cir. 2012), *abrogated by Bruen*, 597 U.S. at 19–20. Under this test, the court first examined whether the challenged regulation "burdens conduct that falls within the scope of the Second Amendment right as historically understood." *Id.* at 518. Second, if the regulated activity was protected by the Second Amendment or "if the historical evidence [wa]s

inconclusive," the court examined the strength of the government's interest in regulating Second Amendment rights under an appropriate level of scrutiny. *Id*.

Also, following *Heller*, the Sixth Circuit repeatedly upheld the constitutionality of § 922(g)(1), relying on *Heller's* designation of such statutes as "presumptively lawful" but without conducting historical analysis. *Williams*, 2024 WL 3912894, at *2; *see, e.g.*, *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2–3 (6th Cir. Mar. 7, 2022) (rejecting an as-applied challenge to § 922(g)(1)); *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010); *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) ("*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically limited in the case of felon prohibitions."); *United States v. Khami*, 362 F. App'x 501, 507–08 (6th Cir. 2010); *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008). Analyzing 18 U.S.C. § 922(g)(4)'s prohibition of firearm possession by the mentally ill, "however, [our appellate court] noted that '*Heller* only established a presumption that' categorical disarmament laws were constitutional." *Williams*, 2024 WL 3912894, at *2 (citing *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc) (reviewing an as-applied challenge to § 922(g)(4)).

In June 2022, the Supreme Court decided *Bruen*, recognizing the Second Amendment protection addressed in *Heller* extended beyond the home and clarifying the test to evaluate the constitutionality of firearm regulations. 597 U.S. at 10, 22–24; *Williams*, 2024 WL 3912894, at *2. *Bruen* held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. *Bruen* also restated the test for determining whether a firearm regulation impinges upon the rights afforded by the Second Amendment, observing that courts that weigh the strength of the governmental interest in regulating firearms are "inconsistent with *Heller*'s historical approach[.]" *Id*. at 24 (stating that

8

the second step that weighs the governmental interest is "one step too many"). When an individual's conduct is within the scope of the plain text of the Second Amendment, the Second Amendment "presumptively protects that conduct." *Id*. If the regulated conduct is covered by the Second Amendment, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. In other words, in applying *Bruen*, courts must determine "(1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation." *United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *2 (6th Cir. Oct. 12, 2023).

While reviewing its analysis in *Heller*, "the Supreme Court [in *Bruen*] reiterated the limitation it noted in *Heller*—that 'the right secured by the Second Amendment is not unlimited.'" *United States v. Atkins*, No. 2:23-cr-20126-MSN, 2023 WL 9166580, at *2 (W.D. Tenn. Dec. 13, 2023) (quoting *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626)). Thus, the Supreme Court explained that "'[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626; *Atkins*, 2023 WL 9166580, at *2 (quoting *Bruen*).

As the Government points out [Doc. 52 pp. 4–5], the separate concurring and dissenting opinions in *Bruen* uphold the presumptive lawfulness of statutes prohibiting felons from possessing firearms as recognized in *Heller*. *Bivens*, 2023 WL 8101846, at *3. In his concurring opinion, Justice Alito states that *Bruen*'s holding "that a State may not enforce a law . . . that effectively prevents its law-abiding residents from carrying a gun for" self-defense does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be

imposed on the possession or carrying of guns." *Bruen*, 597 U.S. at 71–72 (J. Alito, concurring). In a separate concurring opinion, Justice Kavanaugh, joined by Chief Justice Roberts, reiterates the statement from *Heller* that "'the right secured by the Second Amendment is not unlimited'" and that "'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]'" *Id*. at 81 (quoting *Heller*, 554 U.S. at 626–27) (J. Kavanaugh, concurring); *see Willliams*, 2024 WL 3912894, at *3 (remarking on Justice Kavanaugh's concurrence but observing that none of the opinions in *Bruen* "provided any historical justifications" for laws banning firearm possession by felons). Finally, in his dissent, Justice Breyer, joined by Justices Sotomayor and Kagan, also affirmed that "the Court's opinion today . . . cast[s] no doubt on that aspect of *Heller*'s holding" that laws prohibiting felons from possessing firearms are "presumptively lawful." *Id*. at 129 (J. Breyer, dissenting). Thus, a "majority of the Supreme Court agrees – the Second Amendment allows laws that prohibit felons from possessing firearms." *Bivens*, 2023 WL 8101846, at *3; *see also United States v. Bowers*, No. 22-6095, 2024 WL 366247, at *3 (6th Cir. Jan. 31, 2024) (observing that in *Bruen*, five justices joined in opinions reaffirming *Heller*'s statement that laws banning the possession of firearms by prior felons are "presumptively lawful").

On June 21, 2024, the Supreme Court applied the *Bruen* test to a constitutional challenge to 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by a person subject to a domestic violence restraining order. *United States v. Rahimi*, 144 S. Ct. 1889, 1896 (2024). The Court prefaced its analysis by again recognizing that "'the right secured by the Second Amendment is not unlimited.'" *Id*. at 1897 (quoting *Heller*, 554 U.S. at 626). Observing that *Heller* did not "establish[] a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home," but, instead, "stated that many such prohibitions, like those on

the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626–27 n.26); *see United States v. Smith*, No. 5:22-042-DCR, 2024 WL 3510045, at *4 (E.D. Ky. July 23, 2024) (observing that in *Rahimi* and *Heller*, "the Supreme Court has twice implied that felon firearm dispossession statutes are constitutional without directly answering that question"). In his concurrence, Justice Kavanaugh stated that *Heller* and recent Supreme Court case law recognizes several "traditional exceptions" to the Second Amendment right such as prohibiting felons from possessing firearms. *Rahimi*, 144 S. Ct. at 1923 (Kavanaugh, J., concurring).

In *Rahimi*, the Supreme Court also recognized that the "text and history" test[6] reaffirmed in *Bruen* does not "suggest a law trapped in amber." 144 S. Ct. at 1897. Instead, in applying the second step of the test from *Bruen*, a court must examine whether the law or regulation at issue is "'relevantly similar'' to historical firearm regulations by comparing "how and why" the laws (historical and modern) burden the Second Amendment right. *Id.* at 1898 (citing *Bruen*, 597 U.S. at 29); *see Williams*, 2024 WL 3912894, at *3 ("*Rahimi* emphasized that firearm regulations need not have a historical 'twin' to be valid."). Courts employing the second prong of the *Bruen* test need not "find a perfect statutory analogue, [but] rather . . . must ask whether the challenged regulation is 'consistent with the principles that underpin our regulatory tradition.'" *Id.* at *3 n.2 (quoting *Rahimi*, 144 S. Ct. at 1898).

With these principles in mind, the undersigned turns to the arguments in this case.

---

[6] In *Rahimi*, every member of the Supreme Court applied the two-step "text and history" test set out in *Bruen* to the Second Amendment challenge to § 922(g)(8). Mark W. Smith, *Much Ado About Nothing: Rahimi Reinforces Bruen and Heller*, 2024 Harv. J.L. & Pub. Pol'y Per Curiam 26, at *5–7 (Summer 2024). Even Justice Thomas, who disagreed on the applicability of the government's historical analogues, embraced the two-step test from *Bruen* as the appropriate test. *Id.*

11

**A. Section 922(g)(1) Remains Constitutional on Its Face**

Defendant contends that § 922(g)(1) is facially unconstitutional because it violates his Second Amendment right to keep and bear arms [Doc. 21 p. 10]. As discussed above, the Supreme Court in *Heller* characterized statutes prohibiting possession of firearms by felons as "presumptively lawful regulatory measures[.]" *Id*. at 626–27 & n.26. In *Rahimi*, the Supreme Court reiterated this statement from *Heller*, again finding felon-dispossession laws to be "presumptively lawful." 144 S. Ct. at 1902. The Government argues that the Court remains bound by pre-*Bruen* Sixth Circuit cases holding § 922(g)(1) facially constitutional based upon this language from *Heller* because *Bruen* upheld the decision in *Heller* [Doc. 52 pp. 1, 3–6]. In contrast, Defendant asserts that the "text-and-history" test announced in *Bruen* calls into question *Heller*'s dicta that felon disarmament laws remain presumptively lawful [Doc. 21 p. 22]. He maintains that the Sixth Circuit's pre-*Bruen* caselaw does not control the Court's determination of the constitutionality of § 922(g)(1) because neither *Heller*, nor the prior cases from this circuit, performed the historical analysis required by *Bruen* in relation to that statute [*Id*. at 19–22].

Following the Supreme Court's decision in *Bruen*, numerous courts within this circuit[7] and all cases addressing the constitutionality of § 922(g)(1) in this district,[8] held that pre-*Bruen*

---

[7]     *United States v. Fenderson*, No. 1:19 CR 498, 2024 WL 3046600, at *2 (N.D. Ohio June 18, 2024) (denying defendant's post-conviction challenge as untimely, procedurally defaulted, and without merit because the Sixth Circuit's pre-*Bruen* caselaw remains controlling), *appeal filed* July 25, 2024; *United States v. Robinson*, No. 1:23-cr-660, 2024 WL 2816025, at *1–3 (N.D. Ohio June 3, 2024) ("binding precent continues to constrain the Court to deny any facial attack upon § 922(g)(1)"); *United States v. Richards*, No. 1:23-cr-58, 2024 WL 1678942, at *2 (S.D. Ohio Apr. 18, 2024) (finding "the Sixth Circuit decision in *Carey* upholding the constitutionality of 18 U.S.C. § 922(g)(1) remains good law after *Bruen* and therefore remains binding precedent") (collecting cases); *United States v. Wilkinson*, No. 7:23-cr-020, 2024 WL 1506825, at *3 (E.D. Ky. April 8, 2024) (observing that *Carey* did not employ the rejected means-ends scrutiny test, but, instead, was based on *Heller*'s assertion that "nothing in our

Sixth Circuit case law remains binding precedent until the Sixth Circuit addresses the constitutionality of § 922(g)(1) under *Bruen*. The Sixth Circuit has now addressed that issue, holding "that § 922(g)(1) is constitutional on its face and as applied to dangerous people."[9]

---

opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons'"); *United States v. Freeman*, No. 23-20258, 2024 WL 348517, at *5 (E.D. Mich. Jan. 30, 2024) ("join[ing] other Eastern District of Michigan judges and Sixth Circuit courts in concluding that *Carey* 'remains good law after *Bruen*' and that 'this Court remains bound by that precedent'" (internal citation omitted)); *Atkins*, 2023 WL 9166580, at *3 ("[T]his Court remains bound by the Sixth Circuit's decision in . . . *Carey*, . . . which held that § 922(g)(1) does not violate the Second Amendment); *United States v. Mackey*, No. 2:23-cr-67, 2023 WL 8093071, *2 (S.D. Ohio Nov. 21, 2023) (holding that *Carey* remains binding precedent after *Bruen*); *United States v. Williams*, No. 2:23-cr-20083-SHL, 2023 WL 8288973, at * (W.D. Tenn. Nov. 8, 2023) (holding the court "remains bound by Sixth Circuit precedent upholding § 922(g)(1) decided post-*Heller* but pre-*Bruen*"), *aff'd*, 2024 WL 3912894 (6th Cir. Aug. 23, 2024) (upholding constitutionality of § 922(g)(1) after applying *Bruen* test); *see also United States v. Caldwell*, No. 1:24-cr-70, 2024 WL 2784340, at *3 (N.D. Ohio May 30, 2024) ("In the two years since *Bruen* was decided, . . . the vast majority of courts to address the issue, including this one and other courts within the Sixth Circuit, have concluded that the ruling in *Bruen* did not 'overturn, re-write, or alter' the Supreme Court's prior determinations that restrictions on the right of convicted felons to possess weapons are constitutional.") (collecting cases as of May 30, 2024). *But see United States v. Berry*, Nos. 5:22-cr-536, 5:23-cr-222, 4:23-cr-503, 2024 WL 1141720, at *9 (N.D. Ohio Mar. 15, 2024) (rejecting pre-*Bruen* case law in an as-applied challenge because these cases do not "establish[] a historical tradition of felon dispossession as *Bruen* requires"); *United States v. Williams*, No. 23-cr-20201, 2024 WL 731932, at *5–6 (E.D. Mich. Feb. 22, 2024) (determining that *Heller* and pre-*Bruen* case law do not resolve an *as-applied* challenge to § 922(g)(1) but, instead, a constitutional analysis using the test from *Bruen* is required), *appeal filed* Mar. 25, 2024; *United States v. Goins*, 647 F. Supp. 3d 538, 542–44 (E.D. Ky. 2022) (rejecting the application of pre-*Bruen* caselaw in an as-applied challenge to § 922(g)(1)), *appeal filed* Sept. 25, 2023.

[8]     *Crayton v. United States*, No. 1:22-CR-59, 2024 WL 1623094, at *2 (E.D. Tenn Apr. 15, 2024) (McDonough, CDJ) ("[T]he Court is bound to follow Sixth Circuit precedent holding Section 922(g) constitutional unless that precedent is expressly overruled."); *United States v. Kurtz*, No. 1:23-CR-23-TRM-SKL, Doc. 24 p. 2 (E.D. Tenn. Dec. 5, 2023) (McDonough, CDJ) (denying a motion to dismiss the indictment without employing the two-step *Bruen* test because the Court is bound by Sixth Circuit, pre-*Bruen* precedent); *Bivens*, 2023 WL 8101846, at *8 (Atchley, DJ) ("Absent contrary direction, this Court continues to follow the Sixth Circuit's interpretation of *Heller* [in cases such as *Carey*]").

[9]     Prior to its decision in *Williams*, the Sixth Circuit rejected several Second Amendment challenges to § 922(g)(1) on plain-error review, finding that no Sixth Circuit precedent holds § 922(g)(1) to be unconstitutional and "it is unclear that *Bruen* dictates such a result." *United*

*Williams*, 2024 WL 3912894, at *18; *see also United States v. Oravets*, No. 1:23-cr-601, 2024 WL 4041442, at *3 (N.D. Ohio Sept. 4, 2024) (holding that in *Williams*, the Sixth Circuit determined that § 922(g)(1) is facially constitutional).

In *Williams*, our appellate court first determined that its pre-*Bruen* cases are no longer binding because "*Bruen* requires a history-and-tradition analysis that our circuit hasn't yet applied" to § 922(g)(1). 2024 WL 3912894, at *4. The court declined to follow those circuits holding felons are not entitled to the protections of the Second Amendment because they are not "law-abiding" or "responsible," finding such reasoning "inconsistent with both *Heller* and the individualized nature of the right to keep and bear arms" and superseded by *Bruen* and *Rahimi*. *Id.* at *5. The pre-*Bruen* decisions finding § 922(g)(1) constitutional relied only "on *Heller*'s one-off reference to felon-in-possession statutes" without conducting the necessary textual and historical analysis. *Id.* at *6.[10]

---

*States v. Johnson*, 95 F.4th 404, 417 (6th Cir.) (determining the circuit split on whether § 922(g)(1) is unconstitutional in light of *Bruen* precludes a finding of plain error), *cert. denied*, 2024 WL 2805842 (2024); *see also United States v. Philpot*, No. 23-3368, 2024 WL 3429177, at *7 & n.2 (6th Cir. July 16, 2024) (rejecting a Second Amendment challenge on plain error review and noting that *Rahimi* does not require otherwise); *United States v. Storck*, No. 23-5684, 2024 WL 2217903, at *8 (6th Cir. May 16, 2024) (quoting *Johnson*); *United States v. Alvarado*, 95 F.4th 1047, 1052–53 (6th Cir. 2024) (characterizing the constitutionality of § 922(g)(1) after *Bruen* as "unsettled" but observing that given the circuit split on the issue, any error in allowing a § 922(g)(1) conviction to stand is not plain); *United States v. Heard-White*, No. 23-1146, 2024 WL 1049478, at *5 (6th Cir. Mar. 11, 2024) ("A circuit split, like we have here, 'precludes a finding of plain error.'" (citation omitted)); *Bowers*, 2024 WL 366247, at *3 (declining to find plain error when neither the Supreme Court, nor this court has addressed the issue and a circuit split exists). But outside of plain-error review, the court reasoned that *Bruen* did not abrogate prior Sixth Circuit case law relying on *Heller*. *See United States v. Vaughn*, No. 23-5790, 2023 WL 9789018, at *1 (6th Cir. Sept. 28, 2023) (addressing whether defendant's Second Amendment challenge to § 922(g)(1) raised "a substantial question of law or fact" under 18 U.S.C. § 3143(b), which governs a defendant's release or detention pending direct appeal and finding that *Carey* remains binding after *Bruen*).

[10] Concurring only in the judgment in *Williams*, Judge Davis reasoned that *Heller* set felon disarmament statutes apart as presumptively lawful and that separate opinions in *Bruen* and the

14

After finding the pre-*Bruen* decisions lacking, the *Williams* court turned to the *Bruen* test, examining (1) whether the plain text of the Second Amendment covers the defendant's conduct and (2) if so, whether the government can "justify its regulation of that conduct by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24). As to the first prong, the right to keep and bear arms is an individual right, existing before ratification of the Bill of Rights, and belonging to "'all Americans.'" *Id.* at *6–7 (quoting *Heller*, 554 U.S. at 580). "Nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons—or, for that matter, any distinction at all." *Id.* at *7. This broad interpretation of "the people" in the Second Amendment is consistent with the meaning of "the people" in the First and Fourth Amendments, which protections do not "evaporate[] when the claimant is a felon." *Id.* Thus, "the Second Amendment's plain text presumptively protects [the defendant's] conduct," *i.e.*, his right to keep and bear arms, and § "922(g)(1) burdens that right." *Id.* Having satisfied *Bruen*'s first prong, "[t]he question becomes whether that burden is consistent with the principles underpinning our historical tradition of regulating firearms." *Id.*

Turning to the second prong of the *Bruen* test, the court canvassed pre-founding English laws, laws from colonial America at the time of our founding, ratification proposals, and Civil War era laws, finding commonality in laws prohibiting classes of people from possessing firearms if those persons were dangerous because they threatened the peace. *Id.* at *7–13. "This

___

majority in *Rahimi* reiterated that holding. *Williams*, 2024 WL 3912894, at *18–20. The concurrence "take[s] this to mean that *Rahimi* did not intend for courts of appeals to abandon prior decisions that relied on the presumption in favor of conducting independent historical surveys to determine what it already settled: categorical bans that prohibit felons from possessing firearms are 'presumptively lawful' and thus survive constitutional challenge." *Id.* at *20. Thus, in Judge Davis's opinion, pre-*Bruen* decisions concluding that § 922(g)(1) is constitutional remain good law. *Id.*

15

historical study reveals that governments in England and colonial America long disarmed groups that they deemed to be dangerous [because they] . . . posed a fundamental threat to peace[.]" *Id.* at *13. These laws, however, allowed individuals to show, often through their own promise or the assurances of another person, that they were not a danger to the peace and could be trusted with restoration of their arms. *Id.* Because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous[,] . . . most applications of § 922(g)(1) are constitutional, [and] the provision is not susceptible to a facial challenge." *Id.*

Defendant Smith argues that unlike the laws reviewed in *Rahimi*, § 922(g)(1) imposes a permanent, lifelong ban on firearm possession for felons [Doc. 64 pp. 1, 4]. "[W]hen the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Williams*, 2024 WL 3912894, at *17. The *Williams* court found two means of realizing "individualized exceptions" under § 922(g)(1): (1) as-applied constitutional challenges in which a court determines the person's dangerousness and (2) authorization by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") pursuant to 18 U.S.C. § 925(c).[11] *Id.* at *16. The court acknowledged that the ATF's § 925(c) program is not funded and is therefore perhaps illusory relief. *Id.* at *17. The ability to bring an as-applied challenge before a court, however, provides the required opportunity to distinguish oneself from the class. *Id.*

---

[11]     Section 925(c) provides, in pertinent part, that "[a] person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."

16

In summary, § 922(g)(1) is facially constitutional. *Id*. at *18. "Our nation's historical tradition confirms *Heller*'s assumption that felon-in-possession laws are 'presumptively lawful' [and reveals] . . . that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Id*. Based upon the Sixth Circuit's reasoning in *Williams*, Defendant's facial challenge to § 922(g)(1) must fail.

### B. Section 922(g)(1) is Constitutional as Applied to Defendant

Defendant also brings an as-applied challenge arguing that § 922(g)(1) violates the Second Amendment because it imposes a lifelong, permanent infringement of his right to possess firearms without a judicial finding that he "poses a credible threat to the safety of another" [*See* Doc. 60 p. 1; Doc. 64 pp. 1, 4]. A defendant may challenge § 922(g)(1) as applied to him despite the statute's facial constitutionality. *Williams*, 2024 WL 3912894, at *13, 17; *Bivens*, 2023 WL 8101846, at *4 (observing that *Heller*'s guidance that laws prohibiting felons from possessing firearms are presumptively lawful implies that a firearms "'ban could be unconstitutional in the face of an as-applied challenge.'" (internal quotation omitted)). As analyzed in section A. above, § 922(g)(1) "is constitutional as it applies to dangerous individuals." *Williams*, 2024 WL 3912894, at *17. Defendant Smith's criminal record and the circumstances surrounding his current charge show him to be dangerous and, thus, his as-applied challenge fails.

*Bruen* requires the Court to "ask (1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation." *Ramadan*, 2023 WL 663429, at *2 (citing *Bruen*, 597 U.S. at 24). Defendant Smith is an American citizen and, thus, the Second Amendment presumptively protects his possession of a firearm. *See Williams*, 2024 WL

3912894, at *7 (holding the right recognized by the Second Amendment "belongs to 'all Americans'" (quoting *Heller*, 554 U.S. at 580)).  As analyzed in *Williams*, § 922(g)(1) is consistent with our Nation's history of firearm regulation because it regulates the possession of firearms by dangerous persons and individuals may challenge the application of § 922(g)(1) to them by demonstrating they are not dangerous.  *Id*. at *13.[12]

"History shows that governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they aren't."  *Id*. at *17.  "In determining whether an individual has met his burden to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope, courts—much like the officials of old—must focus on each individual's specific characteristics."  *Id*. at *13.  "The dangerousness determination will be fact-specific [and will] depend[] on the unique circumstances of the individual defendant."  *Id*. at *16.  To make this determination, the court looks to the person's total criminal history, not just the predicate felony to his or her felon in possession charge.  *Id*.

In *Williams*, the court found certain categories of crimes are indicative of an individual's dangerousness.  *Id*. at *13–15.  Violent crimes against the person such as murder, rape, assault,

---

[12]    Here, the Government presents historical analogues to § 922(g)(1) in the form of English laws, Revolutionary War era laws, ratification proposals, and punishments for felonies at the time of the country's founding [Doc. 52 pp. 11–15].  *Williams* relies on several of these same laws as relevant historical analogues.  2024 WL 3912894, at *8 (English laws preventing Catholics from possessing firearms to "prevent social upheaval and rebellion"), *10–11 (Revolutionary War era laws prohibiting loyalists from possessing firearms), *11 (ratification proposals), &*9 (two colonies punished people providing arms to Native Americans with death).  And other courts applying the *Bruen* historical tradition test have found that § 922(g)(1) has historical analogues.  *See, e.g.*, *Wilkenson*, 2024 WL 1506825, at *5–6; *United States v. El Bey*, No. 1:21-cr-110, 2024 WL 22701, at *3 (S.D. Ohio Jan. 2, 2024); *Mackey*, 2023 WL 8093071, at *3–4; *United States v. Omar*, No. 2:22-cr-182, 2023 WL 7526045, at *4 (S.D. Ohio Nov. 14, 2023), *appeal dismissed,* 2024 WL 2807316 (6th Cir. May 28, 2024); *United States v. Blue*, No. 2:23-cr-20122-JPM-1, 2023 WL 8292375, at *3–5 (W.D. Tenn. Oct. 31, 2023).

18

and robbery were punished by death at the time of the country's founding. *Id*. at *14.[13]  Section 922(g)(1) historically developed from "concern for guns in the hands of dangerous criminals" such as those committing crimes against the person. *Id*. at *15.  "[V]iolent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id*. at *14 (leaving for another day whether commission of a crime against the person automatically qualifies the perpetrator as dangerous).  "A second category of crimes, while not strictly crimes against the person, may nonetheless pose a significant threat of danger." *Id*. at *15.  Crimes such as drug trafficking and burglary "often lead[] to violence" or "put someone's safety at risk, and thus, justify a finding of danger." *Id*.  Finally, a third category of crimes, such as mail fraud or making false statements, likely involve no physical harm to others and, thus, do not necessarily

---

[13]    Defendant Smith faults the government for failing to identify historical analogues justifying a permanent ban on firearm possession [Doc. 64 p. 4].  The Sixth Circuit, however, relied on the historical record to support a firearms ban for dangerous felons. *Williams*, 2024 WL 3912894, at *13–17.  Likewise, "various district courts [within the Sixth Circuit] . . . have applied the *Bruen* test and determined that section 922(g)(1), as applied to dangerous felons . . ., is consistent with the Nation's historical tradition of firearm regulation." *United States v. Smith*, No. 5: 22-042-DCR, 2024 WL 3510045, at *4 (E.D. Ky. July 23, 2024) (assuming that the plain text of Second Amendment protects a felon's possession of a firearm, "[defendant]—whose criminal history is violent and extensive—falls squarely in the class of people that Congress lawfully and deliberately chose to exclude from being able to possess a firearm").  Even courts which have found § 922(g)(1) unconstitutional as applied "do not support the view that Congress lacks the ability to disarm dangerous felons." *Robinson*, 2024 WL 2816025, at *4; *Caldwell*, 2024 WL 2784340, at *4 ("[E]ven if the Court had ascribed to the minority view, it would have found, at the very least, § 922(g)(1) is constitutional as applied to individuals like [defendant] who are dangerous felons."); *United States v. Silvers*, 671 F. Supp. 3d 755, 768–73 (W.D. Ky. 2023) (reviewing cases finding that historical limits on the right to bear arms were tied to the individual's dangerousness); *Goins*, 647 F. Supp. 3d at 554 ("[T]he history and tradition relevant to the Second Amendment support Congress's power to disarm those that it deems dangerous."). In *Berry*, the court affirmed the constitutionality of § 922(g)(1) as applied to defendants previously convicted of robbery because "Ohio's felony robbery offense is 'distinctly similar' to the historical predicates on which the United States relies that support disarmament based on dangerousness." 2024 WL 1141720, at *20.  *See also Wilkinson*, 2024 WL 1506825, at *6 ("[T]he history and tradition of this country's arms regulations confirms that historic analogues exist to justify the comparably modern legislative decision to disarm felons deemed inherently dangerous to society by Congress.").

render the perpetrator dangerous. *Id.* (opining that "district courts will have no trouble concluding that many of these crimes don't make a person dangerous").

Here, Defendant Smith has prior state convictions for involuntary manslaughter and aggravated assault. These convictions, which are crimes against the person, show Defendant to be a dangerous individual. *See Freeman*, 2024 WL 348517, at *6 (rejecting defendant's as-applied challenge to § 922(g)(1) because he was "convicted of a relatively recent violent felony—assault with intent to do great bodily harm less than murder in 2017"); *United States v. Beard*, No. 2:23-cr-20102-TLP-1, 2023 WL 8288951, at *3–4 (W.D. Tenn. Oct. 19, 2023) (rejecting an as-applied challenge to § 922(g)(1) due to defendant's prior convictions for manslaughter and aggravated assault); *United States v. Keel*, 680 F. Supp. 3d 841, 848 (E.D. Mich. 2023) (rejecting an as-applied challenge to § 922(g)(1) for a defendant with prior felony convictions for child abuse and assault with a deadly weapon); *see also Berry*, 2024 WL 1141720, at *20 (finding § 922(g)(1) constitutionally applies to defendant whose criminal history includes voluntary manslaughter); *Silvers*, 671 F. Supp. 3d at 778 (finding defendant forfeited an as-applied challenge to § 922(g)(8) because he failed to address the underlying facts of the domestic violence restraining order but finding any such challenge would fail because defendant's abuse of his wife while armed and subsequent fatal shooting of his wife show him to be a dangerous individual).

Moreover, Defendant's criminal history reveals that he committed at least three aggravated assaults with a firearm. This shows that Defendant presents a danger to others when armed. *Williams*, 2024 WL 3912894, *17 (concluding defendant's robbery of two people at gunpoint "alone is sufficient to conclude that [defendant], if armed, presents a danger to others or the public").

20

Defendant argues that "at the time of his arrest in the instant cause, [he] had been out of prison approximately eight years and was working full-time . . . as a bus driver" [Doc. 60 p.1]. The Court acknowledges that the actions underlying Defendant's prior convictions for involuntary manslaughter and aggravated assault occurred more than twenty years ago. However, the record before the Court also shows recent allegations of domestic violence that form the basis for search warrants for his cellular telephones. The facts alleged in the search warrant affidavits, which Defendant submits as exhibits to his motion to suppress evidence, reveal that Defendant was subject to a temporary order of protection as a bond condition in 2021 [Doc. 26 pp. 3, 6]. Voicemail, photographs, and texts on Defendant's cellular phone reveal that he caused an injury to his girlfriend's head and that she accused him of pointing a gun at her [*Id.* at 14–15]. These allegations of domestic abuse involving a firearm show Defendant remains a dangerous individual. *See Silvers*, 671 F. Supp. 3d at 778 (finding the underlying facts of the domestic violence restraining order, defendant's abuse of his wife while armed, and ultimately his fatal shooting of his wife reveal his dangerousness). Accordingly, the Court finds § 922(g)(1) is constitutional as applied to Defendant Smith because he is a dangerous felon.

## III.    CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the undersigned finds 18 U.S.C. § 922(g)(1) is constitutional both on its face and as applied to

Defendant Smith. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss Indictment [Doc. 21] be denied.[14]

Respectfully submitted,

*Debra C. Poplin*

Debra C. Poplin
United States Magistrate Judge

---

[14] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).