UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:22-CR-57-TAV-DCP |
| LARICO LAMAR SMITH, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on July 12, 2024 [Doc. 71]. The R&R addresses defendant's Motion to Suppress Statements [Doc. 24] and Motion to Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25] which defendant supplemented [Doc. 26]. The government responded [Doc. 29], and Judge Poplin held a motion hearing on March 27, 2024 [Doc. 55]. Defendant filed a post-hearing brief [Doc. 59], and the government responded [Doc. 62]. Judge Poplin then issued the R&R [Doc. 71], recommending that the Court deny as moot the Motion to Suppress Statements [Doc. 24] and deny the Motion to Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25].

Defendant has filed objections to the R&R [Doc. 77],[1] and the government has responded [Doc. 79]. The matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 71], **DENIES as moot** defendant's Motion

---

[1] Defendant moved for an extension of time to file objections to the R&R [Doc. 74]. Before the Court ruled on the motion, the defendant filed his objections [Doc. 77]. As the Court will consider the defendant's objections to the R&R [Doc. 77], the defendant's motion [Doc. 74] is **DENIED as moot**.

to Suppress Statements [Doc. 24],[2] and **DENIES** defendant's Motion to Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25].

I. Background

The Court presumes familiarity with the background and summary of the evidence set forth in the R&R [*See* Doc. 71, pp. 3–9]. As neither party has objected to this portion of the R&R, the Court reincorporates it in part below:

> On October 24, 2021, officers responded to a residence after receiving a 9-1-1 call from Leu Hunter, who reported a domestic dispute and that Defendant left the residence on foot with a gun. Upon arrival, officers saw Defendant standing by his car, which was parked on the street in front of the residence. Defendant went to the front porch, where the officers arrested him. After Defendant's arrest, officers found a firearm on the ground under or beside Defendant's car. Defendant was charged with domestic assault and unlawful possession of a firearm and was released on conditions, including that he have no contact with the alleged victim Ms. Hunter. The Knox County General Sessions Court issued a Domestic Violence/Child Abuse Conditional Release Order ("CRO"), which was signed by Defendant, memorialized the no-contact condition, and advised Defendant that he was subject to "immediate arrest" for violations of the CRO.
>
> On December 23, 2021, KPD Officer Jonathan Gomez presented a two and one-half page affidavit in support of an application to search a cell phone obtained during Defendant's December 16, 2021[,] arrest. The affidavit states that on December 16, 2021, at 4:48 p.m., Officer Gomez stopped a silver Chevrolet Impala with dark tinted windows and a clear license plate cover in violation of a city ordinance. Officer Gomez identified the driver as Defendant Smith and the front passenger as Leu Hunter. Officer Gomez performed an NCIC records check, which revealed that Defendant ["]was the respondent to an active temporary order of protection that was set as a conditional bond release signed by both" a magistrate judge and Defendant. The records check revealed that "[t]he protected party to this temporary order of protection was Leu Hunter who was seated in the passenger seat." The affidavit provides that the CRO, which remains in effect until October

---

[2] As discussed in the R&R, the government's response to defendant's Motion to Suppress Statements indicated that such was moot because the government did not intend to use defendant's statements at trial [Doc. 71, p. 6, n. 7]. At the evidentiary hearing, the government confirmed this, stating that if it sought to introduce the video recording of defendant's arrest, it would not play the audio [*Id.*]. After the government's clarification, defense counsel agreed that defendant's Motion to Suppress Statements was moot [*Id.*]. Thus, the Court **DENIES as moot** defendant's Motion to Suppress Statements [Doc. 24], and the Court will limit its analysis to defendant's Motion to Suppress Any and All Evidence Obtained by the Execution of State Search Warrants [Doc. 25].

2

Case 3:22-cr-00057-TAV-DCP   Document 81   Filed 09/20/24   Page 2 of 10   PageID #: 381

26, 2022, prohibits Defendant from contacting or communicating with Ms. Hunter in person or by electronic means and directs him to avoid any place where she is likely to be. The affiant attached a copy of the CRO as an exhibit to the affidavit.

Officer Gomez's affidavit states that Defendant was arrested without incident and that officers removed a black Apple iPhone from his hands. The affidavit relates that officers spoke with Ms. Hunter, who professed not to know that Defendant was prohibited from contacting her. Ms. Hunter told the officers that she and Defendant had separate residences.

According to the affidavit, Officer Gomez has participated in numerous investigations of domestic violence, domestic assault, and of violations of orders of protection. The affidavit states that based upon Officer Gomez's training and experience, he knows that most people use cell phones as their primary means of communication, and he believed that Defendant used his cell phone to arrange to meet Ms. Hunter to pick her up in his vehicle. Also, based on his training and experience, Officer Gomez knows that persons violating conditional release orders will use their cell phones to communicate with the protected party "through third-party applications, text messages, phone calls, emails, and other electronic means that may be stored on the" cell phone.

The affidavit states that at the conclusion of the stop, law enforcement released the vehicle to Ms. Hunter at Defendant's request. According to the affidavit, Defendant's "Apple iPhone was placed into [his] property and processed by Knox County Detention Facility." Officer Gomez "retrieved the Apple iPhone from the Knox County [Sheriff's] Detention Facility and confiscated [it]" and secured it at the KPD Property Unit. The affidavit asks to search Defendant's cell phone for evidence of violations of his CRO as prohibited by Tennessee Code Annotated § 40-11-150.

Based upon Officer Gomez's affidavit, Knox County Criminal Court Judge Scott Green issued a search warrant for Defendant's cell phone on December 23, 2021. The search warrant permits the search of Defendant's cell phone, located at the KPD, for evidence of violations of a conditional release order, including calls and electronic communications from Defendant to the victim Leu Hunter.

[*Id.* at 3–5 (citations and footnotes omitted)].

At the March 27, 2024, evidentiary hearing, the government presented the testimony of Officer Gomez [*Id.* at 6].[3] During his testimony, Officer Gomez recounted the events of

---

[3] At the time of the evidentiary hearing, Officer Gomez had become a detective at the Knoxville Police Department [*Id.*]. However, for consistency purposes, the Court will use the title Officer Gomez, save for the portions directly quoted from the R&R [Doc. 71].

3

defendant's December 16, 2021, arrest, which Officer Gomez described in his December 23, 2021, affidavit in support of an application for a search warrant of defendant's cell phone [*Id.*]. Judge Poplin summarized the remainder of Officer Gomez's testimony as follows:

> [Detective Gomez] agreed that he consulted with the assistant district attorney ("ADA") when preparing the application for the search warrant and the ADA reviewed the application. Detective Gomez stated that he frequently asks the ADA to review his search warrant applications to make sure that he includes all elements of the crime and that the probable cause and alleged charges are correct. He said in this case, the ADA approved his search warrant application for the contents of Defendant's cell phone and that a state court judge issued the search warrant. Detective Gomez said, at the time he sought the search warrant, Defendant had state charges for violating the protective order and additional charges relating to his female passenger. He agreed that he was investigating those crimes.
>
> . . .
>
> On cross-examination, Detective Gomez testified that on December 16, 2021, he was not yet a detective but was a uniformed officer. He stated that he had no information about Defendant or his passenger before stopping Defendant's vehicle, nor did he know who was in the car. He said once he stopped Defendant's vehicle, the passenger identified herself as Leu Ellen Hunter. He agreed Defendant cooperated with him and provided his identification. Detective Gomez said he did not cite Defendant for his window tint being too dark or for having a clear plate cover. Instead, he arrested Defendant for violating his bond condition.
>
> Detective Gomez agreed that orders of protection are a "separate legal proceeding" from bond conditions but said here, he understood the bond conditions to be a temporary order of protection. He stated that he asked ADA Takisha Fitzgerald about bond conditions being temporary orders of protection. He did not recall whether he spoke with ADA Fitzgerald from the scene of the stop or afterward, but he thought he had already arrested Defendant for violating his bond conditions when he spoke with her. Detective Gomez agreed he did not observe any offenses other than the traffic infractions for which he stopped the vehicle and that he did not cite Defendant for these traffic infractions.
>
> Detective Gomez testified that he took Defendant's cell phone and "put it in his property," and the cell phone went to the jail with Defendant. He agreed that he placed Defendant's cell phone in Defendant's personal property. Detective Gomez stated that he did not search Defendant's car and did not see any weapons in Defendant's car or find any on his person.
>
> Detective Gomez agreed that on December 21, 2021, he took Defendant's iPhone from Defendant's personal property at the KCSO. He acknowledged that he did not

4

have a search warrant at that time. He also agreed that on December 23, 2021, he applied for a search warrant for the contents of Defendant's iPhone. Detective Gomez said he took Defendant's cell phone from Defendant's personal property because he was investigating Defendant's violation of an order of protection. He said when he took the phone from Defendant, he did not ask Defendant whether it would contain evidence of contact between him and Ms. Hunter because Defendant would not speak to him. He did not recall whether he asked Ms. Hunter about communications between her and Defendant on Defendant's cell phone. Detective Gomez agreed that he retrieved Defendant's cell phone because he thought it might contain proof of communications between Defendant and Ms. Hunter.

[*Id.* at 7–9 (citations omitted)].

Defendant argued that his Fourth Amendment rights were violated first when law enforcement seized his cell phone without a search warrant during his arrest and later when law enforcement retained it while obtaining a search warrant [Doc. 71, p. 11]. Defendant also contended that the affidavit in support of the search warrant failed to establish probable cause for the search warrant's issuance on two grounds: "(1) the affiant made deliberately or recklessly false statements and material omissions that were essential to the issue judge's probable cause finding; and (2) the affidavit did not provide a nexus between his cell phone and the evidence of bond violations" [*Id.*].

The government, in turn, stated that Officer Gomez properly seized defendant's phone when he was arrested, arguing that Officer Gomez had probable cause to believe the cell phone contained evidence that defendant had violated his bond conditions [*Id.* at 12 (citing Doc. 29, p. 12; Doc. 62, p. 3)]. Furthermore, the government maintained that law enforcement could lawfully hold the defendant's cellphone and move it from one facility to another because it had a "continuing governmental interest in the property" [*Id.* (citing Doc. 29, p. 12; Doc. 62, p. 3)]. Regarding Officer Gomez's affidavit in support of the search warrant, the government contended that the affidavit contained no deliberately or recklessly false statements, and the affidavit properly provided probable cause for the search warrant [*Id.* at 11]. In the alternative, the government

5

asserted that even if the seizure of the cell phone or search warrant issuance contravened the Fourth Amendment, the executing officers relied on the search warrant in good faith, and thus, the evidence should not be excluded [*Id.*].

Upon consideration of the record and the parties' arguments, Judge Poplin has recommended that defendant's motion to suppress [Doc. 25] be denied. Judge Poplin concluded that Officer Gomez's warrantless seizure of defendant's cell phone during his arrest and later from the Knox County Sheriff's Office property storage did not violate the Fourth Amendment [Doc. 71, p. 11]. Further, Judge Poplin determined that Officer Gomez's affidavit fails to provide probable cause to search defendant's cell phone because it lacks a sufficient nexus between the alleged criminal activity and defendant's phone [*Id.*]. Nevertheless, Judge Poplin concluded that suppression of the evidence is not warranted because law enforcement relied on the search warrant in good faith [*Id.*].

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the defendant's motion to suppress and supplement, the government's response, the parties' post-hearing briefing, the R&R, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the

6

analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

III. Analysis

Defendant objects to the following conclusions in the R&R: (1) law enforcement relied in good faith on the search warrant in searching defendant's phone; and (2) the warrantless seizure of defendant's cell phone from his possession and the later warrantless seizure of his cell phone from his personal property at the Knox County Detention Facility were not violations of the Fourth Amendment [Doc. 77, pp. 1–2].

Defendant's second objection is a general one. Other than stating his disagreement with the conclusion that the two warrantless seizures of defendant's cell phone were not violations of the Fourth Amendment, defendant does not point to or explain the source of any error or mistake in the R&R's reasoning. *See Howard*, 932 F.2d at 509. Accordingly, the Court finds that this objection is not a valid one, as it lacks the specificity required to trigger *de novo* review of the issue. *See id.*; *see also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested

7

resolution, or simply summarizes what has been presented before, it not an 'objection' as that term is used in this context.").

Though exceptionally brief, the Court will construe defendant's remaining objection as being sufficient for review as it appears to point out an alleged error or mistake in the R&R's reasoning. Defendant first points to the R&R's reliance on *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015), stating that the court there, in the context of search warrants for cell phones, held that there must be a showing that evidence of criminal activity would be found on a particular cell phone in order to find a sufficient nexus [Doc. 77, p. 1 (citing Doc. 71, p. 28)]. In turn, defendant appears to argue that because the R&R properly found that the affidavit in support of the search warrant for defendant's phone lacked probable cause "because it did not provide a sufficient nexus between the evidence sought and the location to be searched" [*Id.* at 1–2 (citing Doc. 71, p. 32)], the R&R erred in concluding that law enforcement relied on the search warrant in good faith [*Id.* at 2].

In its analysis of the good faith exception to the exclusionary rule, the R&R states that an officer acts recklessly, rather than in good faith, "[w]here the officer anchors his conduct to a so-called 'bare-bones affidavit'" [Doc. 71, p. 31 (citations omitted)]. To avoid the bare-bones descriptor, the affidavit must have a "minimally sufficient nexus" [*Id.* (citations omitted)]. Some slight evidence between the criminal activity at issue and the place to be searched will support an officer's good-faith belief in the existence of probable cause and be enough to overcome a "bare-bones" categorization [*Id.* (citations omitted)].

Against this backdrop, the R&R concluded that Officer Gomez's affidavit contained the required "minimally sufficient nexus" for the good-faith exception to apply [*Id.*]. The R&R cited to Officer Gomez's observation of defendant violating the no contact order by being in his car with

8

Ms. Hunter, Ms. Hunter informing Officer Gomez that she and defendant did not live together, and Officer Gomez's experience that individuals who violate their conditions of release do so by electronic means such as texting [*Id.* at 31–32]. The culmination of this information led Officer Gomez to infer that defendant had violated his no-contact order by calling or texting Ms. Hunter in addition to her being in his car [*Id.* at 32]. And therefore, the R&R found that while the affidavit may have been deficient in probable cause, the seized evidence should not be suppressed as law enforcement searched defendant's cell phone in good faith reliance on the search warrant [*Id.*].

The apparent crux of defendant's argument is that the R&R's conclusion that the affidavit in support of the search warrant for defendant's cell phone lacked probable cause because it did not provide a sufficient nexus between the evidence sought and the location to be searched is *inconsistent* with the R&R's conclusion that Officer Gomez's affidavit contained the required "minimally sufficient nexus" needed to support an officer's good-faith belief in the existence of probable cause. Thus, it appears the defendant's position is that there is no difference between a nexus sufficient for probable cause and a nexus sufficient for the application of the good-faith exception. This position is inconsistent with the case law.

The question of the difference between a proper nexus, sufficient for probable cause, and a minimal nexus, sufficient for the good-faith exception, was posited in *United States v. Reed*, 993 F.3d 441, 450–51 (6th Cir. 2021). "There obviously 'must be daylight' between the two standards because [the good-faith] exception applies only when an affidavit falls short of probable cause." *Reed*, 993 F.3d at 451 (citing *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017); *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)). Indeed, a minimally sufficient nexus is "a lower standard than the 'fair probability' needed to demonstrate nexus for purposes of probable cause." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024); *accord United States v.*

9

*Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) ("We previously found [the good-faith exception] applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause.").

Therefore, defendant's interpreted assertion that the R&R's "nexus" findings are inconsistent is unsupported by case law. The standards for each nexus are markedly different, and thus, defendant's objection is **OVERRULED**.

## IV. Conclusion

For the reasons above, defendant's objections [Doc. 77] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 71] in whole and **DENIES** defendant's motion to suppress [Doc. 25]. Further, the Court **DENIES as moot** defendant's Motion to Suppress Statements [Doc. 24] and Motion for Extension of Time to File Objections [Doc. 74].

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE