UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:22-CR-57-TAV-DCP ) |
| LARICO LAMAR SMITH, | ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant's Motion for Revocation of Detention Order [Doc. 94]. Defendant moves the Court to revoke the Order of Detention [Docs. 93, 93-1] entered by United States Magistrate Judge Debra C. Poplin on February 11, 2025. The government filed a response in opposition [Doc. 96]. For the reasons discussed below, the Court **DENIES** defendant's motion.

**I.  Background**

Defendant is charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 39].[1] On February 4, 2025, the parties appeared before Judge Poplin for a detention hearing, and after hearing proof and arguments, she took the matter under advisement [Doc. 91]. Judge Poplin subsequently found that, after weighing the factors set forth in 18 U.S.C. § 3142(g), the "proffers,

---

[1] The superseding indictment contains a sentencing allegation pursuant to 18 U.S.C. § 924(e) which states that before defendant committed the instant offense charged, he "had at least three previous convictions committed on occasions different from one another" [*Id.*].

exhibits, and arguments presented[,] . . . including the Amended Pretrial Services Report . . . establish[ed] clear and convincing evidence that [d]efendant poses a risk of danger to the community" [Doc. 93-1, p. 1]. In particular, the Court concluded that defendant poses a danger to the community based on the instant charge and "the danger of accessing firearms as a felon[,]" defendant's criminal history, and defendant's charges of domestic violence and the related, underlying conduct [*Id.* at 1–4]. Accordingly, Judge Poplin ordered that defendant be detained pending trial [*Id.* at 4].

On February 25, 2025, defendant filed the instant motion, asking the Court to revoke the order of detention and release him on various conditions because "there is insufficient proof in the record to support the magistrate judge's finding of dangerousness" [Doc. 94, pp. 1, 4]. Defendant asserts that conditions of a third-party custodian, home confinement and/or GPS tracking, and the requirement to maintain or seek full-time employment would be sufficient to ensure the safety of the community [*Id.* at 4]. In support of his motion, defendant states that Judge Poplin based her finding of dangerousness "in part on [defendant's] remote-in-time criminal history from 20 years ago and on domestic assault charges from 2018 and 2021" [*Id.* at 3]. Defendant contends he was not, and has not, been convicted of either domestic assault charges, and, in fact, Judge Poplin failed to note that the 2018 domestic assault charge was dismissed [*Id.*]. On March 11, 2025, the government responded in opposition [Doc. 96].

2

## II. Applicable Law

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013). A hearing is not required on a § 3145(b) motion. *See United States v. Walden*, No. 3:24-CR-19-KAC-JEM-6, 2024 WL 2121232, at *1 (E.D. Tenn. May 10, 2024) (citation omitted). Given defendant relies on the arguments and proof presented at the detention hearing, the Court does not find it necessary to hold a second hearing.

18 U.S.C. § 3142(g) requires the Court to use four factors in determining whether there are conditions of release that will "reasonably assure" the appearance of the defendant and the safety of the community. These four factors include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

3

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "If, after a hearing[,] . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). Such a finding must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), and such burden rests upon the government. *See United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

## III. Analysis

### A. Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged favor detention. As stated previously, the superseding indictment in this case charges defendant with knowingly possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 39]. The Sixth Circuit has noted that possession of a firearm by a felon is a serious offense. *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002). And moreover, crimes involving firearms are a specific consideration under 18 U.S.C. § 3142(g)(1).

As to the circumstances surrounding this offense, law enforcement responded to defendant's residence after receiving information from an emergency dispatch about a man with a gun [Doc. 95, p. 22; *see* Doc. 81, p. 2]. While the parties disputed where law

4

enforcement first saw defendant in relation to the gun at the hearing,[2] it is uncontested that a firearm was located by law enforcement under defendant's car [Doc. 95, pp. 20, 25; *see* Doc. 81, p. 2]. Lastly, though there is no accusation of defendant discharging said firearm, his possession of a firearm as a felon still weighs against his release. *See United States v. Thomas*, No. 2:23-CR-71(3), 2023 WL 3956225, at *4 (S.D. Ohio June 12, 2023) (finding that, despite not being accused of using firearms, the defendant's possession and distribution of firearms weighed against the defendant's release). Accordingly, considering the nature and circumstances of defendant's alleged offense, this factor weighs against his release.

### B.  Weight of the Evidence

Next, the Court is to consider the weight of evidence against defendant. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citations omitted).

The Court first turns to defendant's criminal history as outlined in the presentence investigation report ("PSR") for his prior federal conviction, Case No. 3:03-cr-100. On October 4, 1994, when defendant was a juvenile, he shot an individual with a handgun, inflicting wounds that resulted in the death of the victim [Case No. 3:03-cr-100, PSR ¶¶ 11,

---

[2] Specifically, the government asserted that the firearm was found "at a location close to the feet of where [the defendant] was standing when [law enforcement] arrived" [*Id.* at 20]. And defendant claimed that firearm was not seen at defendant's feet, and defendant was halfway up his driveway when law enforcement saw him [*Id.* at 25].

5

39]. Defendant was originally charged with first degree murder [*Id.*]. After being transferred and prosecuted in Knox County Criminal Court as an adult, defendant entered a guilty plea to voluntary manslaughter, a lesser included offense, on May 30, 1995 [*Id.*]. On the same day, defendant also pled guilty and was convicted of aggravated assault for serious bodily injury with a beer bottle [*Id.* ¶¶ 11, 38].

Defendant has four other aggravated assault convictions from 2006 which relate to offenses occurring in 2002 and 2003 [*Id.* ¶¶ 41, 43]. In the first offense, on September 22, 2002, defendant approached the victim, knocked him to the ground, and shot him in the leg [*Id.* ¶¶ 12, 41]. The remaining three convictions, brought under the same docket number, appear to stem from an incident occurring on January 18, 2003, in which defendant shot at three victims and struck one in the back [*Id.* ¶¶ 13, 43].

On August 5, 2003, defendant was arrested after law enforcement, responding to a call about a shooting in a housing community, observed defendant throwing a 9mm semiautomatic pistol behind his back [*Id.* ¶ 16]. Upon defendant's arrest, law enforcement uncovered another firearm that contained three spent shell casing and two live rounds [*Id.*]. Defendant pled guilty to being a felon in possession of ammunition and a felon in possession of a firearm and ammunition and was sentenced to an aggregate of 151 months [Case No. 3:03-cr-100, Docs. 53, 57, 58].[3] Defendant was released in 2014 and completed his supervised release in 2017 [Amended Pretrial Services Report ("APSR"), p. 3].

---

[3] After an appeal, defendant was re-sentenced on April 16, 2007, to the same term of imprisonment of 151 months [Case No. 3:03-cr-100, Docs. 79, 81].

6

After defendant completed his supervised release, defendant was charged with domestic assault on two occasions, in 2018 and 2021 [Doc. 95, pp. 5–6, 8; APSR, p. 4]. As discussed by defendant in both the detention hearing and in his instant motion, the former of these charges has been dismissed [Doc. 95, p. 8; Doc. 94, p. 3]. The 2021 charge, however, has not been dismissed, and such charge stems from the same underlying facts as the instant case wherein law enforcement responded to a domestic disturbance dispatch regarding a man with a gun on October 24, 2021 [Doc. 95, p. 8]. And after defendant was charged with domestic assault, he was released on conditions, including that he have no contact with the alleged victim, Leu Hunter [*Id.* at 5–6; Doc. 26, p. 6].

In December 2021, defendant was pulled over for a traffic violation, and the victim was in the vehicle with defendant in direct violation of his bond conditions [Doc. 95, p. 6]. Defendant's phone was taken during his arrest, and after law enforcement obtained a search warrant, his phone was searched [*Id.*; Doc. 26, pp. 2–4, 9–11]. As discussed by the government at the detention hearing, law enforcement discovered voice messages and photographs exchanged between defendant and Hunter [Doc. 95, p. 6; Doc. 26, pp. 12–18]. Specifically, in one voicemail Hunter left to defendant, Hunter stated that defendant had hit her on the head repeatedly [Doc. 26, p. 14]. A photograph sent by Hunter to defendant shows the alleged injury [*Id.*]. Law enforcement also discovered a voicemail in which Hunter accused defendant of pointing a gun at her, and a screenshot of a text conversation between defendant and Hunter in which Hunter stated her life was in danger, telling defendant to stay away and that she will protect herself [*Id.* at 14–15].

7

Ultimately, given the above, the Court finds that the weight of the evidence of dangerousness here weighs in favor of detention. While defendant argues that Judge Poplin based her finding of dangerousness in part on defendant's "remote-in-time criminal history" [Doc. 94, p. 3], defendant's argument is undercut by the fact that he was incarcerated for a large portion of the period between his last conviction and his arrest for the instant offense. Defendant also appears to take issue with Judge Poplin's reliance on his 2018 and 2021 domestic assault charges, the former of which has been dismissed [Doc. 94, p. 3]. However, "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention." *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). In any event though, "the court may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution." *Id.* Thus, the Court is allowed to consider defendant's domestic assault charges and what law enforcement uncovered in relation to these charges. *See also Stone*, 608 F.3d at 953 (considering domestic violence to weigh in favor of dangerousness); *United States v. Mason*, No. 1:20-CR-287, 2024 WL 4544332, at *4 (N.D. Ohio Oct. 22, 2024) (finding the defendant's "history of disturbing and violent interactions with his family and significant others" to favor detention); *United States v. Stevenson*, No. 20-20026, 2020 WL 1975229, at *4 (E.D. Mich. Apr. 24, 2020) (considering defendant's "history of violence behavior towards others, specifically

women" in its analysis of the 18 U.S.C. § 3142(g) factors). And after considering this in conjunction with defendant's criminal history, the Court finds defendant's conduct to illustrate a risk of continued danger to the community.

C.     **History and Characteristics of Defendant**

Next, the Court turns to defendant's history and characteristics, considering defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).[4]

Defendant is 46 years old and has stated no physical or mental health concerns aside from a gunshot wound he sustained in 2003 [APSR, pp. 1–2]. Defendant submits he has long-standing ties to the community in Knoxville, and he represents that his four sisters, mother, and aunt live in Knoxville [*Id.*; Doc. 95, pp. 23–24]. Defendant's mother and aunt both attended and testified at the detention hearing, stating they would be willing to be third party custodians for defendant [Doc. 95, pp. 15–19]. Defendant has never married, but he does have a 24-year-old stepdaughter [*Id.* at 9–10; APSR, p. 2]. As presented at the detention hearing, defendant's stepdaughter wrote a letter to the Court stating that defendant "has always gone out [of] his way to help provide for [her]," even helping her finish college [Detention Hearing Ex. 5].

---

[4] The Court does not find § 3142(g)(3)(B) to be applicable in defendant's case.

9

As to his employment, defendant was employed with Knoxville Area Transit ("KAT") from 2017 up until his arrest in 2022 [Doc. 95, p. 8; APSR, p. 2]. Defendant's supervisor when he was working at KAT provided a letter of support to the Court which noted that defendant demonstrated an "exceptional" work ethic [Detention Hearing Ex. 4; Doc. 95, p. 9]. At the detention hearing, defendant's mother testified that Stefan Bonner, a relative of defendant's who is a supervisor at Tranzonic Industries in Knoxville, would be able to get defendant a full-time job if he were to be released [Doc. 95, pp. 18–19; *see* APSR, p. 2]. Turning to defendant's educational background, he attended Central High School in Knoxville, Tennessee, until the ninth grade, and later obtained his General Educational Development ("GED") diploma [APSR, p. 2]. After obtaining his GED, defendant attended some college at Pellissippi State Community College [*Id.*]. Defendant represents that he is approximately 12 credit hours short of obtaining his associate's degree [*Id.*].

Although law enforcement has identified defendant as being affiliated with a gang, defendant denies any gang connection, and it does not appear that defendant has been charged or convicted of any gang-related offense [*Id.*; *see* Doc. 95, p. 24]. In fact, at his detention hearing, Rashaad Woods, a long-time acquaintance of defendant and current Knoxville Director of the Renounce Denounce Gang Intervention Program ("RDGIP"), testified that defendant had previously volunteered with a predecessor of the RDGIP [Doc. 95, pp. 12–14]. Specifically, Woods stated that defendant was a contact in the community

10

who was available to speak as a "critical messenger" to younger individuals and guide them in choosing a more positive life trajectory [*Id.* at 13–14].

Regarding substance abuse, the APSR states that it does not appear defendant is currently addicted to any illegal substances due to his custodial status [APSR, p. 2]. Defendant, however, does have some substance abuse history [*Id.*]. Specifically, defendant began using alcohol at the age of 13, consuming a six pack of beer and one-half pint of liquor each day [*Id.*]. Additionally, defendant began using marijuana at the age of 15, using it at least once a month, and defendant began using Valium and Xanax on a daily basis at some point in his life [*Id.*].

As discussed in detail in the previous section, defendant has convictions for voluntary manslaughter, aggravated assault, and felon in possession of a firearm and ammunition [Case No. 3:03-cr-100, Doc. 81; PSR ¶¶ 38, 39, 41, 43]. And defendant has pending charges in state court for felon in possession of a weapon, domestic assault, and violation of a no contact order [APSR, p. 3].[5] Defendant does not appear to have any record of missing appearances for court proceedings.

The Court acknowledges that some of defendant's history and characteristics favor his release. Specifically, defendant appears to have strong familial support in Knoxville, Tennessee, and he has demonstrated a good work ethic in his employment with KAT. Defendant has also represented evidence of good character in providing for his

---

[5] The Court incorporates its earlier analysis as to defendant's arguments regarding his criminal history and pending charges here.

11

Case 3:22-cr-00057-TAV-DCP   Document 99   Filed 03/25/25   Page 11 of 13
PageID #: 474

stepdaughter and volunteering with a local organization aimed at supporting young, vulnerable individuals. However, the Court does not find that this evidence "negate[s] a possibility of criminal conduct" when viewed in combination with defendant's criminal history and his pending domestic assault charge. *See United States v. Jones*, No. 6:16-cr-34, 2018 WL 2275235, at *4 (E.D. Ky. May 17, 2018); *accord Mason*, 2024 WL 4544332, at *4 (stating that while it considered the defendant's family and community support, employment plans, and compliance with his halfway house and house arrest conditions, the court "must also consider [the defendant's] other characteristics, including his criminal history").

### D. Nature and Seriousness of the Danger Posed by Defendant's Release

Turning to the final factor under § 3142(g), the Court first reemphasizes the seriousness of the alleged offense in this case. Defendant is charged with possessing a firearm despite being prohibited to do so [Doc. 39], a crime he has previously been convicted for in this very Court [*See* Case No. 3:03-cr-100]. And the Court cannot ignore the underlying facts of defendant's instant charge which also led defendant to incur a charge in state court for domestic assault [Doc. 95, p. 8; APSR, p. 3]. Defendant's criminal history also shows a series of serious, violent offenses [Case No. 3:03-cr-100, PSR ¶¶ 38, 39, 41, 43]. And in several of these offenses, defendant employed a firearm [*Id.* at ¶¶ 39, 41, 43]. The Court also underscores the fact that defendant killed another individual by using a firearm [*Id.* ¶ 43]. Finally, the Court incorporates its previous description of defendant's pending domestic assault charge, his violation of his no contact order, and what

12

law enforcement discovered upon a search of defendant's phone. Taking all of this evidence into consideration, the Court finds that this factor weighs in favor of detention.

IV. **Conclusion**

Ultimately, the Court finds that the government has adequately satisfied its burden of persuasion to show defendant's dangerousness. The nature and circumstances of the offense, the weight of the evidence, the history and characteristics of defendant, and the nature and seriousness of the danger to the community all weigh in favor of defendant's continued pretrial detention. The Court is convinced that no conditions or combination of conditions for release would reasonably assure the safety of the community. Accordingly, defendant's Motion for Revocation of Detention Order [Doc. 94] is hereby **DENIED**. Defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE